DIAMOND STATE IRON Co., Defendant below, Plaintiff in Error *v.* FERRIS GILES, Plaintiff below, Defendant in Error.

*Owner of Real Estate—Master and Servant—Negligence—Injuries—Damages—Building Ordinance—Charge to Jury.*

The owner of real estate is bound to take care that those who come upon his premises by express or implied invitation be protected against injury resulting from the unsafe condition of the premises, or from other perils, the existence of which the invited party has no reason to look for.

A servant coming upon dangerous premises without being apprised of the danger by the owner thereof is entitled to damages for injuries thereby sustained.

The right of a servant to recover damages from his employer for injuries sustained by the fall of a building while in his service depends upon the fact whether, under all the circumstances proved, the employer exercised reasonable care and prudence in the erection of the building, and upon which the servant was employed as a carpenter at the time the building fell to the ground.

The master will, however, be exempted from responsibility where the risks are apparent and are voluntarily assumed by a person capable of understanding and appreciating them.

A rolling mill having a trussed roof is within the provision of the building ordinance of the City of Wilmington which provides "that the outside walls of buildings having trussed roofs, such as churches, public halls, theatres, restaurants and the like, if more than sixteen and less than twenty-five feet high, shall average at least seventeen inches in thickness."

When a servant goes upon the roof of a building as an employe of his master, to work thereon, he has a right to assume, without particular investigation or inquiry, that the master has exercised due care and caution in the erection of the building, and has not omitted the performance of any duty in respect thereto which should have been observed by an ordinarily careful and prudent man.

In a charge to the jury all the court said in regard to a particular subject must be considered together, and so interpreted as to make all the expressions on the same subject harmonious and consistent.

*(October 27, 1887.)*

ERROR to the Superior Court to review a judgment* rendered in New Castle County, in favor of the plaintiff below, etc., in an action on the case for personal injuries received from the fall of a building. *Affirmed.*

This was an action on the case brought in the Superior Court in and for New Castle County, at its September term, 1885, by Ferris Giles, the defendant in error, against the Diamond State Iron Company, the plaintiff in error, to recover for injuries suffered by the said Giles, by reason, as is alleged, of the negligence of the company. The defendant below, prior to this suit, was engaged in erecting a large building, to be used in connection with its rolling-mill, on its own land, in the city of Wilmington, and had contracted with a bricklayer to build a brick wall of great lenth and height, as a part of said building. That said wall was built by the contractor, according to plans furnished by, and under the supervision of, the defendant, and supported in part a trussed roof, upon which the plaintiff below was engaged as a carpenter, having entered the employment under a contractor for the wood-work of said building the day before he was injured, and when the roof was nearly finished and closed in. The day after his employment the building fell, and inflicted on the plaintiff below the injuries for which this suit was instituted. The evidence on the part of the plaintiff below tended to show that the building fell by reason of the insufficiency and weakness of the brick wall; that it was built of good material, and that the work of the brick-layer was all that

*See this case in court below, reported on page 453, Current Volume.

it should be, but that the plans prepared by the defendant below were defective, and did not provide for sufficient thickness to the wall; that the attention of the defendant below was called to the thinness of the wall by the contractor, by the foreman of the brick-layers, and by the building inspector of the city.   Experts were examined on both sides as to the sufficiency of the wall, and the plaintiff testified that his attention had never been called to the wall previous to going to work upon the roof; and it was proved that the wall, up to the time of its fall, was exceedingly plumb and straight, and was in good and workman-like condition and appearance.   It was likewise in evidence that the wall did not conform to the building ordinance of the city of Wilmington in that regard.   With some other evidence, as to a violent storm just before the accident, the case was submitted to the jury upon the charge of the Court, and a verdict of guilty was rendered against the defendant below.

The questions presented are stated in the opinion of the Court.

*Charles B. Lore, George H. Bates* and *Edward G. Brad-ford,* for plaintiff in error, defendant below :

Assuming, for the sake of argument, that the rolling mill came within the provision of the ordinance quoted by the Court below, and that the brick wall did not conform to its requirements, the mere fact of the violation does not entitle the plaintiff below to re-cover, for unless the falling of the building was caused by the vio-lation of the ordinance, there clearly could be no recovery.

*Chicago etc. R. R. Co. v. McKean,* 40 Ill., 218, 229 ; *Briggs v. N. Y. Cent. etc. R. R. Co.,* 72 N. Y., 26, 30 ; *Mathiason v. Mayer,* 3 Mo., (L. ed.) 119, 7 West. Rep., 739.

Nor could there be a recovery against the defendant below, for any violation of the ordinance, if the plaintiff below can fairly be treated as having assumed the risk of the situation as it was.

*Wood Master & S.* § 397.

To be actionable, negligence must manifestly be the cause of the injury complained of.

*Wharton, Neg.,* §§ 73, 129 ; 2 *Thompson, Neg.,* 1085, § 3.

As between employer and employe the former cannot be held

for injuries resulting to the latter, if he has exercised the ordinary care which a prudent man should have observed.

*Wood, Master & S.*, §§ 326, 337, 342; *Wharton, Neg.*, § 212 ; *Indermaur v. Dames*, L. R. 2 C. P., 311; *Whittaker's Smith, Neg.*, 125.

The employer is not an insurer of the safety of the employe nor can he be held for *culpa levissima.*

Wharton lays this down as one of the fundamental propositions of the law, and especially with reference to the liability of the owners of real estate, for injuries resulting from the unsafe condition thereof.

*Wharton, Neg.*, § 831.   See also *Mad River etc. R. R Co. v. Barber*, 5 Ohio St. 541 ; *Murray v. McLean*, 57 Ill. 7, 378, 382.

In this action the burden of proof was upon the plaintiff to show due care on his part.

*Thompson, Neg.*, 1053 ; *Whittaker's Smith, Neg.*, 381; *Wharton, Neg.* § 428.

If the plaintiff and defendant below had equal knowledge, or means of knowledge, as to the risk or danger of the falling of the rolling mill there could be no recovery.

This rule is specially applicable to a case like the present, in which the employe was engaged to work upon the thing in which the alleged defect existed.

*Priestley v. Fowler*, 3 Mees & W., 1 ; *Williams v. Clough*, and *Griffiths v. Gidlow*, 3 Hurlst. & N., 258, 648 ; *Senior v. Ward*, 1 El. & El., 385 ; *Griffiths v. London etc. Docks Co.* L. R., 12 Q. B. Div., 493 ; *Dynan v. Leach*, 40 Eng. Law & Eq., 491 ; *Skipp v. Eastern Counties R. Co.*, 9 Exch., 223 ; *McGlyun v. Brodie*, 31 Cal., 376 ; *Malone v. Hawley*, 46 Cal., 409 ; *Hayden v. Smithville Mfg. Co.* 29 Conn., 548, 560; *Wright v. N. Y. Cent. R. R. Co.*, 25 N. Y., 562, 566.

The plaintiff below having been employed to work upon the premises of the defendant below, was bound to make reasonable use of his eyes and thinking faculties, in order to avoid peril.

*Stone v. Oregon City Mfg. Co.*, 4 Or. 52 ; *Hughes v. Winona etc. R. R. Co.*, 27 Minn., 137.

He was bound at his peril, therefore, to take notice of patent defects in the rolling mill, upon which he undertook to work.

*Gibson v. Erie R. Co.*, 63 N. Y. 449 ; *Wood, Master & S.*, §§ 335, 382.

If the plaintiff either had knowledge, or the means of knowledge, which it was his duty to acquire, of the defects, if any, in the rolling mill and the risk connected therewith, he must be considered as having assumed that risk, and could not recover.

*Stone v. Oregon City Mfg. Co., Hughes v. Winona etc. R. R. Co.* and *McGlynn v. Brodie, supra; Way v. Ill. Cent. R. R. Co.* 40 Iowa, 341 ; 2 *Thompson, Neg.*, 994.

The plaintiff below as a matter of law, must be held to have assumed whatever risk was connected with the thinness of the wall or with the end of the building which was left open, and could not recover.

*Priestley v. Fowler*, 3 Mees. & W., 1 ; *Assop v. Yates*, 2 Hurlst. & N., 768 ; *Seymour v. Maddox*, 5 Eng. Law & Eq., 265 ; *Wilkinson v. Fairrie*, 1 Hurlst. & C., 633 ; *Gibson v. Erie R. Co.*, 63 N. Y., 449 ; *McGlynn v. Brodie*, 31 Cal., 376 ; *Malone v. Hawley*, 46 Cal., 409 ; *Wright v. N. Y. Cent. R. R. Co.*, 25 N. Y., 562 ; *Ballou v. Chicago etc., R. Co.* 54 Wis., 257, and cases heretofore cited.

In view of the testimony there was no such evidence of negligence on the part of the defendant below as justified the court below in submitting the case to a jury.

*Toomey v. London etc. R. Co.* 3 C. B. N. S., 146 ; *Cotton v. Wood*, 8 C. B. N. S., 568 ; *Hammack v. White*, 11 C. B. N. S., 588.

*George Gray* and *Levi C. Bird*, for defendant in error, plaintiff below :

The owner who erects, or permits to be erected, an unsafe structure on his land is responsible to those who, without negligence on their part, are injured by reason of the unsafe character of such structure. No intermediate agent or contractor can relieve the owner from such responsiblity, if the structure erected is itself unsafe. The duty which the owner of the land owes to the public and to all persons who come lawfully within, or are lawfully exposed to the danger, is violated by his allowing it to be so erected. The violation of this duty is legal negligence.

*Wharton, Neg.* § 232, 232 *b ; Deford v. State*, 30 Md., 204 ;

*Ellis v. Sheffield Gas Co.*, 2 El. & Bl., 767 ; *Robbins v. Chicago*, 71 U. S., 4 Wall., 657, 678 (18 L. ed. 427) ; *Hole v. Sittingbourne etc. R. Co.*, 6 Hurlst. & N., 488 ; *Vincett v. Cook*, 4 Hun., 318 ; *Indermaur v. Dames*, L. R., 2 C. P., 311.

This is a leading case, and is reported in 1 *Thompson Neg.*, 283, also in Bigelow's Leading Cases on Torts.

*Chapman v. Rothwell*, Ell. Bl. & Ell., 168 ; *Roberts v. Smith*, 2 Hurlst. & N., 213 ; *Terry v. Ashton*, and *Bower v. Peate*, L. R., 1 Q. B. Div., 314, 321 ; *Gray v. Pullen*, 5 Best & S., 970, 983 ; *Francis v. Cockrell*, L. R. 5 Q. B., 501, 513 ; *Pickard v. Smith*, 10 C. B. N. S., 470 ; *John v. Bacon*, L. R. 5 C. P., 437 ; *Holmes v. North Eastern R. Co.*, L. R. 4 Exch., 254 ; *White v. France*, L. R. 2 C. P. Div., 308 ; *Smith v. London etc. Docks Co.*, L. R. 3 C. P., 326 ; *Heaven v. Pender*, L. R. 11 Q. B. Div., 503, 515 ; *Combs v. New Bedford Cordage Co.*, 102 Mass., 572. ·

When a servant is injured when engaged about the business of his master, by the negligence of the master, the master is liable, upon the same principle that he would be liable to a stranger who came lawfully within the danger.

*Shearman and Redf. Neg.*, § 89; *Beach, Cont. Neg.*, §96; *Wharton, Neg.*, §§ 205, 207, 214; *Clarke v. Holmes*, 7 Hurlst. & N., 937, 943, 946, 949; *Smith Neg.*, 419 ; *Hough v. Texas & P. R. R. Co.*, 100 U. S. 225 (25 L. ed. 617); *Britton v. Great Western Cotton Co.* L., R. 7 Exch., 130, 137, 139 ; *Wood, Master & S.*, § 334 ; *Bigelow, L. Cas. Torts*, note 706.

The ordinary risks of the particular employment are assumed by the servant who voluntarily enters it ; but the negligence of the master is not one of those risks ; the negligence of fellow servant is.

*Beach, Cont. Neg.*, §§ 95, 96 ; *Hough v. R. R. Co.*, and *Roberts v. Smith, supra ; Wood, Master & S.*, § 359 ; *Northern Pac. R. R. Co., v. Herbert*, 116 U. S., 642, 647 (29 L. ed. 755); *Murphy v. Phillips*, cited in *Wharton, Neg.*, § 210 ; *Pollock, Torts*, 323.

If the injury suffered by the plaintiff was by reason of the negligence of the defendant itself in constructing on its premises an unsafe and weak wall, in a building upon which it invited or employed plaintiff to work—and of this abundant evidence was offered to the jury, and they have passed upon it—no question of

its being one of the risks of his employment to be assumed by the plaintiff, can be properly considered in this case, because : Although it is undoubtedly true that a servant undertakes the ordinary risks of the employment which he voluntarily enters, which include the risk of the negligence of fellow servants, it is an equally well established rule of law that the negligence of the master is never one of the risks of employment so undertaken by the servant. In fact the negligence of the master may be said to be the one risk of all others which the servant does not undertake.

 *Clarke v. Holmes*, 7 Hurlst. & N., 937, 943, 946, 949; *Smith Neg.*, 419; *Hough v. Texas & P. R. R. Co.*, 100 U. S., 225 (25 L. ed., 617); *Britton v. Great Western Cotton Co.* and *Northern Pac. R. R. Co., v. Herbert, supra; Bradbury v. Goodwin*, 2 Ind. (L. ed.), 681, 6 West. Rep., 590 ; *Beach, Cont. Neg.*, § 123.

 As to distinction between knowledge of defects and knowledge of risks.

 *Cook v. St. Paul etc. R. Co.*, 34 Minn., 45; *Russell v. Minneapolis etc. R. Co.*, 32 Minn., 230 ; *Pantzar v. Tilly Foster Iron Mining Co.*, 99 N. Y., 368 ; *Madden v. Minneapolis etc. R. Co.*, 18 Am. & Eng. R. R. Cas., 63.

 Every one entering the employment of another has a right to assume that his employer has been guilty of no negligence by himself or his agents as to those things under his control, and which may affect the safety of those entering upon such employment.

 *Chicago etc. R. R. v. Swett*, 45 Ill., 197 ; *Ill. Cent. R. R. v. Welch*, 52 Ill., 183 ; *Chicago etc. R. Co., v. Jackson*, 55 Ill., 492 ; *Cumberland etc. R. R. Co. v. State*, 44 Md., 283 ; *Paulmier v. Erie R. R. Co.*, 34 N. J. Law, 151 ; *Gibson v. Pac. R. R. Co.*, 46 Mo. 163 ; 2 *Thompson, Neg.*, 1052,

 In regard to injuries resulting to a servant from the negligence of the Master, the question is considered juridically precisely as in other cases where the relation of master and servant does not exist, and the injured party was lawfully and properly within the danger.

 *Indermaur v. Dames*, L. R., 2 C. P., 311 ; 1 *Thompson Neg.*, 283 ; *Ashworth v. Stanwix*, 3 El. & El., 701 ; 2 *Thompson, Neg.*, 974, 975.

 *Cook v. St. Paul etc. R. Co.*, 34 Minn., 45, supports the court

below in the doctrine that while the servant assumes the ordinary risks of his employment, yet he does not stand upon the same footing with the master as respects the matter and duty of care in inspecting and investigating the risks to which he may be exposed; and that the servant has the right to presume that the master has fully done his duty.

So also *Russell v. Minneapolis R. Co.*, 32 Minn., 230; *Coombs v. New Bedford Cordage Co.*, 102 Mass., 572, 595, 599; *Chicago etc. R. Co. v. Jackson*, 55 Ill., 492; *Hole v. Sittingbourne etc. R. Co.*, 6 Hurlst. & N., 488, 490, 492–495, 497, 499; *Snow v. Housatonic R. R. Co.*, 8 Allen, 441; *Plank v. N. Y. Cent. etc. R. R. Co.*, 60 N. Y., 607; *Patterson v. Pittsburg etc. R. R. Co.*, 76 Pa., 389; *Ryan v. Fowler*, 24 N. Y., 410.

The undisputed proof in this case is that plaintiff did not know of any peril attending his going upon the building in question; and there is nothing in the case to show that he ought to have known it.

On the other hand there was abundant evidence submitted to the jury, that defendant was notified of the insufficiency of the wall; and even if he did not know of its insufficiency, the case is just one of that kind that the law must say that it was his duty to know.

*Deford v. State*, 30 Md., 179; *Ryan v. Fowler*, 24 N. Y., 410; *Madden v. Minneapolis etc. R. Co.*, 18 Am. & Eng. R. R. Cas., 63; *Bean v. Oceanic Steam Nav. Co.*, 24 Fed. Rep., 124; *Totten v. Pa. R. R.*, 11 Fed. Rep., 564, 566, 567.

The servant cannot be expected to exercise more skill or judgment than the master.

*Wood, Master & S.*, 679; *Chicago etc. R. Co. v. Jackson*, 55 Ill., 492; *Cayzer v. Taylor*, 10 Gray., 274.

The charge of a Court to the jury must be taken together, and if it harmonizes as a whole, and correctly presents the law, a new trial will not be granted because a separate instruction does not contain all the conditions which are to be gathered from the entire text. *People v. Doyell*, 48 Cal., 85.

Instructions to the jury, and modifications of proposed instructions, are to be construed not as abstract propositions, but as they would be understood in the light of the particular circum-

stances of the case as disclosed by the evidence. *Sword v. Keith,* 31 Mich., 247.

It is not error to refuse instructions asked by counsel, if the Court correctly gives the law upon all points arising in the case. *Crisman v. McDonald,* 28 Ark., 8.

Although some of the instructions of the Court to the jury may not state the law with precise accuracy, yet, if taken as a whole, they are substantially correct, and could not have misled the jury to the prejudice of the defendant, the judgment will not be disturbed. *People v. Cleveland,* 49 Cal., 578.

Where the principles declared in a request have already been properly laid before the jury in other instructions, the request may be refused. *McGonigle v. Dougherty,* 71 Mo., 259; *Railway Co. v. Ross,* 112 U. S., 395, 5 Sup. Ct. Rep., 184; *Bank v. Bank,* 21 Wall., 294, 301; *Walburn v. Babbitt,* 16 Wall., 580.

SAULSBURY, CHANCELLOR:

What is negligence? The term is relative and its application depends upon the situation of parties and the degree of care and vigilance which circumstances reasonably impose. That degree is not the same in all cases, but may vary according to the danger involved in the want of vigilance.

All the surrounding or attendant circumstances must be taken into account when the question involved is one of negligence. Negligence in a legal sense is no more or less than the failure to observe, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury.

Negligence is sometimes classified as gross negligence, ordinary negligence and slight negligence; but this classification only indicates that under the special circumstances great care and caution are required, or only ordinary care or only slight care. If the care demanded is not exercised, the case is one of negligence; and a legal liability is made out when the failure is shown.

There is no contention in the present case as to the relation which existed between the plaintiff below and the defendant below. That relation was one of master and servant. A master's negligence may consist in subjecting the servant to the dangers of un-

safe buildings or machinery, or to other perils on his own premises which the servant neither knew of nor had reason to anticipate or to provide against when he entered the employment or subsequently. The general rule is that while the owner of real estate is not bound to provide safeguards for wrong doers, he is bound to take care that those who come upon his premises by express or implied invitation be protected against injury resulting from the unsafe condition of the premises, or from other perils, the existence of which the invited party had no reason to look for.

The invitation to come upon dangerous premises without apprising him of the danger is just as culpable, and an injury resulting from it is just as deserving of compensation in the case of a servant as in any other case.

No reason of public policy, and none to be deduced from the contract of the parties, can be suggested, which should relieve the culpable master from responsibility. A man cannot be understood as contracting to take upon himself risks which he neither knows or suspects nor has reason to look for, and it would be more reasonable to imply a contract upon the part of the master not to invite the servant into unknown dangers than one on the part of the servant to run the risk of them. But the question of contract may be put entirely aside from the case; and the responsibility of the master may be planted upon the same ground which would render him responsible if the relation had not existed. Whether invited upon the premises by the contract of service or by the calls of business, or by direct request, is immaterial; the party extending the invitation owes the duty to the party accepting it, to see that at least ordinary care and prudence are exercised, to protect him against dangers not within his knowledge and not open to observation. It is a rule of justice and right which compels the master to respond for a failure to exercise this care and prudence.

While these propositions are true, it is equally true that the master will be exempted from responsibility in all cases where the risks are apparent, and are voluntarily assumed by a person capable of understanding and appreciating them. No employer by any implied contract undertakes that his buildings are safe beyond a contingency, or even that they are as safe as those of his neighbors or that accidents shall not result to those in his service from risks

which others would guard against more effectually than is done by him. Neither can a duty rest upon anyone which can bind to so extensive a responsibility.

Negligence does not consist in not putting one's buildings or machinery in the safest possible condition, or in not conducting one's business in the safest way ; but there is negligence in not exercising ordinary care that the buildings and machinery such as they are shall not cause injury and that the business as conducted shall not inflict damage upon those who are guilty of no neglect of prudence.

These general remarks in reference to the duties, rights and liabilities resulting from the relation of master and servant will tend to illustrate what I conceive to be the principle which should govern in the decision of this case, which is that the right of the plaintiff below to recover damages from the defendant below depends upon the fact whether, under all the circumstances proved, the latter exercised reasonable care and prudence in the erection of the building it did erect, and upon which the former was engaged as a carpenter for hire at the time that building is proved to have fallen.

Was the erection of that building, under all the circumstances proved in the cause, reasonable or lawful ? And was such reasonable care and prudence exercised by the corporation in the erection of it under all the circumstances, and upon which the plaintiff, as its servant, was employed at the time he received the injuries, compensation for which he brought his suit, and was the law as given in charge by the Court to the jury properly subject to the exceptions taken by the appellant ?

These questions necessarily lead in the first instance to the inquiry whether the erection of the building itself was lawful; for if the erection of the building itself was not lawful while such erection in and of itself on account simply of its illegality can give to the plaintiff no right of private action against the corporation, yet it may have a very material influence in determining the liability of the corporation to the plaintiff for compensation and damages for any injuries proved to have been sustained by the plaintiff while working as the servant of the corporation in and upon such illegal building.

By section 7 of an ordinance providing for building regulations, for a building inspector, and prescribing his duties for the City of Wilmington, approved January, 1885, it was, among other things, ordained as follows:

" In *all business buildings,* such as stores, warehouses, factories, public schools, etc., the thickness of outside walls of such structures, *two stories* in height, shall not be less than *thirteen* inches for the first and second stories respectively. For buildings *three stories* in height the walls shall not be less than *seventeen* inches in thickness for the first story, and thirteen inches for the second and third stories, respectively. For buildings *four stories* in height the walls for the *first* and the *second* stories shall be *seventeen* inches in thickness and those of the third and fourth stories *thirteen* inches, respectively. The outside walls of buildings having trussed roofs, such as churches, public halls, theaters, restaurants and the like, if more than sixteen and less than twenty-five feet high, shall average at least seventeen inches in thickness."

Now while a rolling mill, such as the building erected by the appellant, may, as I think, without the least impropriety, be called a factory, it is not such a building as was contemplated in the first paragraph or sentence of the ordinance as herein cited, for a building two stories in height was thereby contemplated; nor was it a building contemplated by either or any of the other provisions of said ordinance as cited, unless it was such a building as was contemplated in the last sentence of such ordinance as I have cited it.

My opinion is that it was such a building as was and is contemplated and meant in and by said last sentence quoted from said ordinance. Such sentence is the only one in said ordinance which embraces buildings having trussed roofs such as churches, public halls, theaters, restaurants and the like. The building erected by the appellant was only one story in height, and it had a trussed roof.

The ordinance manifestly was meant for the protection of all persons who should have occasion to be in said building, either as employees or for other lawful purposes and objects. The protection of persons who might lawfully be in churches, public halls, theaters, restaurants and the like, was certainly the object of the provision of this ordinance. The words, " And the like " occurring after the

particular buildings or structures mentioned cannot properly be interpreted as limiting the buildings having trussed roofs to uses similar to the uses to which churches, public halls, theaters and restaurants are particularly appropriated; but are meant to give extension to the uses to which buildings having trussed roofs may be properly applied, and protection to persons properly and lawfully in any such buildings having trussed roofs, whatever their lawful uses may be, was as much intended by this provision of the ordinance as it was to the persons who might be in churches, public halls, theaters or restaurants. The designation of these particular buildings was meant, as the Court below very properly said, as an illustration and not as a limitation.

Trussed roofs are roofs packed or bound closely. They are necessarily very heavy roofs; and although they are sometimes said to be self-supporting, this is said only in respect to their being packed or bound closely and not otherwise; for their weight when supported either by walls or pilasters is uncommonly heavy in comparison to the weight of other kinds of roofs.

It is stated in the opinion of the Court below, and I suppose correctly, for it is a part of the record in this Court, that the rolling mill or building erected by the defendant below and plaintiff in error was 250 feet long, fifty-six or fifty-seven feet wide and twenty-one feet high to the square. One side was to be a brick wall twenty.one feet high from the foundation and nine inches or one brick thick with pilasters sixteen feet apart from center to center, seventeen inches (or two bricks) in thickness and about twenty-six or twenty-seven inches wide. The other side of the building and one of its ends were built of wood but the other end was left open from the ground at the instance, as the Court below says, and by the orders of the defendant, through its agents (there being no other floor), to the square of the building.

"This opening was," says the charge, "about fifty-six feet wide by twenty-one feet high."

"The nine inch wall," says the charge, "was pierced in the middle of the space between each of the pilasters with an opening for a window about 4½ wide by seven or eight feet high, in which window frames were secured."

"The whole structure," says the Court, "was covered by what

was called by the witnesses a trussed roof, self supporting and framed as shown by the plans exhibited. Upon the brick wall was a wooden plate three inches thick and thirteen wide and properly secured where the pieces of it were joined to make it continuous. There were girders resting upon this plate over each of the pilasters; they were well secured to the wall through the plate, according to the testimony."

There was nothing resting upon the nine inch wall but the plate described. All the actual weight, therefore, of the truss frame, with its covering of inch boards and longitudinal ventilator of 250 feet, and slating to be done upon the whole, was to be borne by the pilasters, with the lateral support the nine inch walls between them would give to them. This was the building upon which, on July 28, 1885, the plaintiff below went to work as a carpenter and servant of the defendant below. On the next day while the plaintiff was working upon the roof as a carpenter or upon a longitudinal ventilator, the building fell, and the plaintiff received the injuries in respect to which he instituted the action below.

Now I think it may be safely stated in conformity with the decisions in well adjudged cases, that a servant when he goes upon the roof of a building as an employe of his master, to work thereon, has a right to assume, without particular investigation or inquiry into the fact, that the master has exercised due care and caution in the erection of the building, and has not admitted the performance of any duty in respect thereto which should have been observed by an ordinarily careful and prudent man.

The employment of the plaintiff below did not necessarily require a minute inspection of the whole building, and every part thereof, in order to ascertain whether the owner of the building had properly performed his duty in respect to work, not a part of that which the servant, as a carpenter, was more immediately connected with. He had a right to assume, unless his attention was directed to the contrary thereof, that the defendant below had performed, with ordinary prudence and care, as a reasonable and prudent employe, its whole duty in respect to the erection of the building, so far as the same had been then completed. His attention was not called or directed by the defendant, or any other per-

son as far as the record shows, to any imperfection in the building or work theretofore done by others in respect thereto.

In this case the defendant interposed in the Court below, and in the argument before us, the defense of contributory negligence.

Regarding the case of a negligent injury the general result of the authorities (says Cooley, in his work on Torts, 674) seems to be that if the plaintiff or party injured by the exercise of ordinary care under the circumstance might have avoided the consequence of the defendant's negligence but did not, the case is one of mutual fault; and the law will neither cast all the consequence upon the defendant, nor will it attempt any apportionment *of it.*

This, he says, is the English rule, and that it has been accepted by the Courts in this country.

Judge Cooley cites with apparent approbation the opinion of *Mr. Justice* Whiteman, in a case before him, in which the following language is used, as the proper rule on this subject :

"It appears to us that the proper question for the jury in this case, and indeed of all others of the like kind, is whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary or common care and caution that but for such negligence or want of ordinary care and caution on his part the misfortune would not have happened. In the first case plaintiff would be entitled to recover, in the latter not; as but for his own fault the misfortune would not have happened. Mere negligence or want of ordinary care and caution would not, however, disentitle him to recover, unless it were such that but for that negligence or want of ordinary care and caution the misfortune could not have happened; nor if the defendant might, by the exercise of care on his part have, avoided the consequences of the neglect or carelessness of the plaintiff."

In delivering the charge to the jury below, the Court necessarily had in view the building such as it was proved before them to have been, and all the circumstances attending its erection.

There is comparatively little said in the charge, in respect to the care and diligence which the master should have observed in causing the building to be erected, or in respect to the degree of

negligence which would render the defendant below responsible in damages to the plaintiff below for the injuries he had received by reason of its fall.

After the charge had been delivered to the jury, and the counsel for the defendant had called the attention of the Court to certain specific prayers which they had made for instruction, the *Chief Justice* then observed that "When the charge covers instructions, the Court is not bound to review the points which the charge covers."

The record discloses that the Court then read separately the instructions presented by the defendant's counsel, and said: "We decline to give instructions on the point covered by the first, as we have already instructed you on that point when we said that a man ought to exercise due care in a case of that kind, and must take something beyond the ordinary care in putting up a building of that kind."

What was the building thus alluded to?    It was the building, a description of which had been given in the charge and heretofore alluded to by me—a building erected contrary to the ordinances of the city and for the erection of which the plaintiff was subject to a penalty; a building to the defects in the plan of which the attention of the president of the Corporation had been specifically directed, and to the defects in which it is not proved that the attention of the servants or employees had been directed.

I cannot believe that this remark of the *Chief Justice* did mislead, or was calculated to mislead the jury in the finding of their verdict.    There certainly was evidence enough to justify the verdict rendered, without attributing to these words, which were spoken in reference to a "building of that kind," any effect greater than that manifestly intended.

There is but one other prayer for instruction that I deem it necessary to refer to, and that is the eighth, which is in these words: "That if the jury, from the evidence, believe that the building in question would not have fallen at the time it did fall, but for wind pressure upon the building; and shall further believe that the building would have fallen under that wind pressure, even if the brick wall between the piers had been thirteen (13) inches in thick-

572 COURT OF ERRORS AND APPEALS.

ness, plumb and properly constructed, then the plaintiff cannot recover."

The charge of the Court below, in respect to the storm that was alleged by the defendant to have occurred on the afternoon of July 29, 1885, was in these words: "If you should find that the building would have resisted any usual storm in this latitude, the same as other similar buildings of large proportions and well built do, but that the storm that overthrew it was extraordinary, such as builders do not provide against or contemplate in planning their architecture, then the defendant is entitled to your verdict. But the plaintiff is entitled to it, unless the defendant shows this to your satisfaction. *Prima facie* when a building falls it is from negligence or insufficient construction; it lies upon a defendant, who is such on that account, to prove the causes over which he had no control, and for which he is not responsible, brought about the result. It is a most unusual thing for a house to fall to the ground; and he who, by no fault of his, suffers injury by it has a right to call upon the owner for compensation for such injury. If he resists the action he must show that he was in no default whatever."

Thus the charge upon this matter rested, when first delivered to the jury.

The exception taken to the charge of the Court in respect to this matter of the storm is as follows: "That the said Court erred in charging the jury that unless the storm was a phenomenal one, such as builders do not provide against and do not contemplate, that one is liable if a building falls by reason of that storm."

I see no just exception to the charge of the Court, as originally read to the jury.

Examples of that form of charge are to be found in other cases, and in other Courts.

It was only after the charge had been read and the attention of the Court directed particularly to this prayer for instructions by the counsel for the defendant that the *Chief Justice* said that he had told the jury "That unless the storm was a phenomenal one such as builders do not provide against and do not contemplate, that one is liable if the building fall by reason of that storm."

Now these words must be construed in connection with words used by the same judge in his charge. All the Court said upon this

subject of storm and wind pressure, must be considered together, and so interpreted as to make all the expressions on the same subject harmonious and consistent.

Considered as an entirety the charge must be construed as meaning by the description of a storm as phenomenal as an " Extraordinary storm such as builders do not provide against or contemplate in planning their architecture."

It certainly would not be strictly accurate to speak of a storm as a phenomenon or as phenomenal in its character.

Phenomenal means pertaining to a phenomenon in appearance. Phenomenon in a general sense means an appearance; anything visible; whatever is presented to the eye by observation or experiment; or whatever is discovered to exist; as, the phenomenon of the natural world; the phenomenon of heavenly bodies; or of terrestrial substances. It sometimes denotes a remarkable or unusual appearance, or an appearance whose cause is not immediately obvious.

But we do not sit to determine hypercritically the meaning of words, but to give to them a fair and rational interpretation, according to the intention and sense in which they are used.

The building erected by the defendant below was not such as met the requirements of the ordinance above referred to. The average thickness of its outside brick wall was not at least seventeen inches, but only slightly over ten inches when the thickness of the pilasters is added to the thickness of that part of the wall which was only nine inches thick.

This defect in the construction of the outside wall was known to the defendant, and was not proved to have been known to the plaintiff below.

The building fell and the plaintiff received injuries thereby, compensation for which in damages the jury (after considering all the facts in the cause) have duly awarded.

Without extending this opinion further it is sufficient to say that after considering fully the other causes assigned we deem them insufficient to justify a reversal of the judgment of the Court below, and that *judgment is therefore, affirmed.*