**BRAREN v. HORNER.** *
Patent Appeal No. 2600.

Court of Customs and Patent Appeals.
Feb. 25, 1931

*Rehearing denied May 27, 1931.

Edward H. Cumpston, of Rochester, N. Y., for appellant.

Allen E. Peck, of Washington, D. C. (Peck & Peck, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant, Lorenz Konrad Braren, filed his application in the Patent Office on December 4, 1923, for improvements in belt gearings. On June 23, 1924, the appellee, George Horner, filed his application for a patent on improvements in and relating to engraving machines. The Horner application went to patent on November 17, 1925, as No. 1,562,237. On June 12, 1926, an interference was declared by the Patent Office between Horner's patent and the aforesaid application of Braren, the counts of the interference being eight in number, and having been taken from the Horner patent. The counts of the interference, for the purposes of this case, may be divided into two classes, of which counts 1 and 4 may be said to be typical. These counts are as follows:

"Count 1: An engraving machine and the like, comprising a cutter head movable laterally over the work and carrying a rotary cutter spindle, a belt transmission for driving such spindle, and means for constantly maintaining said transmission under approximately uniform driving tension with respect to said spindle whatever the operative lateral position of the head over the work, said means embodying a fulcrumed counter-balanced member carrying transmission belt pulleys, said member being supported independently of said head and being connected therewith to constantly maintain the relative positions of the head and member during the lateral movements of the head over the work."

"Count 4: In an engraving machine and the like, in combination, a cutter head providing with a rotary cutting tool spindle having a driven pulley for driving said spindle, pantograph mechanism for moving said head over the work, an endless friction belt transmission for driving said pulley, and supporting means for said transmission constructed and arranged to maintain said transmission under uniform tension, said supporting means embodying a counter balanced upright vertically swingable lever having universal lateral push and pull connection with said head."

On December 15, 1926, the appellant Braren made a motion in the Patent Office that his aforesaid application be given the same force and effect as if actually filed in this country on December 11, 1922, which was alleged by him to be the filing date of an application for patent No. D-42851, for the same invention filed by his assignee in Germany less than twelve months prior to the actual date of filing of the interfering application, which motion was allowed to the extent that Braren was entitled to the benefit of the application for whatever it might disclose. In support of this motion, appellant filed a certified copy of the said application, dated as alleged by him, and which appears with the accompanying drawings and specification in the record. An examination of this application discloses that it is an addition to a former application filed in Germany on July 6, 1922, numbered D-42050. The application of December 11, 1922, makes this reference to said No. D-42050: "The belt guide for spindles which are movable radially as desired, described in the main application D. 42050 XII/47h. * * *"

During the taking of Braren's testimony in the interference matter, the party Horner demanded production of the German application No. D-42050. The attorney for Braren, by letter which appears in the record, declined to furnish this copy. Subsequently, and after the time for taking testimony had expired, Braren attempted to file a copy of said application No. D-42050, which was denied admission in evidence by the examiner

of interferences and by the Commissioner of Patents, on appeal by Braren.

On the 22d of September, 1927, the examiner of interferences awarded priority to the party Horner, holding, in so doing, that the application of December 11, 1922, did not disclose the subject-matter of the counts of the interference, and that therefore Braren, being relegated to the date of his application in the United States, in view of the finding as to conception and reduction to practice by Horner, as hereinafter set forth, must be deemed the junior party. In so holding, the examiner of interferences also called attention to the fact that the earlier German application No. D–42050, not being in evidence, could not supplement the proof of appellant and make his application as specific and applicable to an engraving machine as was required by the counts of the interference. Thereupon Braren made a motion to reopen the hearing and introduce such earlier German application. This was refused on the ground that it did not disclose newly discovered evidence. The examiner of interferences was sustained on the merits by the Board of Appeals.

 Both the examiner of interferences and the Board of Appeals found, on the record, that Horner was entitled to a date of conception of February, 1923, and reduction to practice in March, 1923. These findings have apparently been accepted by Horner, as no cross-appeal was prayed by him from the same. It is true that in this court Horner has argued for an earlier date of conception and reduction to practice than that found by the tribunals of the Patent Office. However, having failed to appeal and assign errors in this respect, we are of opinion that this matter is not now before us for consideration. We said in Re Laura M. Schneider, 39 F.(2d) 278, 279, 17 C. C. P. A. 952: "Those appealing to this court should give to the court, by specific assignments, and with particularity, all grounds of alleged error upon which they rely." Certainly, if the appellee was intending to question this finding of the Patent Office tribunals, he should have, in some proper way, preserved his rights in this respect. Furthermore, the issue being one of fact and both tribunals having concurred in their conclusions, we are not disposed to disturb such finding. Beidler v. Caps, 36 F.(2d) 122, 17 C. C. P. A. 703; Clancy v. DeJahn, 36 F. (2d) 131, 17 C. C. P. A. 714; Pengilly v. Copeland, 40 F.(2d) 995, 17 C. C. P. A. 1143; In re Moulton, 38 F.(2d) 359, 17 C. C. P. A. 891.

No error is assigned by Braren on the findings of fact by the Patent Office tribunals that Horner is entitled to priority, if the respective German applications of Braren be disregarded. The issue, therefore, is one of law and presents this question: Is Braren entitled to the date of his German application of addition, No. D–42851, namely, December 11, 1922, as the date of his conception and reduction to practice, for the purposes of this interference? The tribunals below held, and appellee argues here, that Braren is not entitled to the date of the German additional application because the interference counts here do not read upon the disclosure thereof, and that the counts of the interference are limited to an engraving machine or a similar machine, and that Braren's additional application was not so limited.

No point is made by appellee that the German application No. D–42851, of December 11, 1922, is not the first application for a patent upon the device described therein which was filed in Germany, as required by section 4887, Revised Statutes, as amended (35 USCA § 32), and, therefore, in what we shall say, we shall assume, without deciding, that if the disclosure of the German application No. D–42851, read upon the counts in the interference here, the date of said application will comply with the statutory requirements of said section 4887.

Some description of the nature of the Horner device, and the device described in Braren's application in this interference and his German application, is essential. Horner shows a cutter head, fitted with a centrally revolving spindle, attached to the lower end of which is a chuck to hold "any suitable rotary milling or other cutter 4a required to perform the desired engraving or cutting functions." The cutter head is mounted upon the end of an arm of pantograph arrangement, permitting any vertical or horizontal movement of the tool required to conform with the surface of the metal worked upon. The said spindle is rotated by a pulley attached horizontally thereto, and an endless belt which passes around said pulley, runs over idler pulleys and then around a pulley fixed upon the upper end of a vertically swingable upright arm, counterbalanced below its axis or fulcrum, by an adjustable counterweight. The said pulley upon the top of said upright arm is mounted upon one end of a countershaft extending horizontally through the upper end of said upright arm and which countershaft bears a conical pulley on the other end thereof. These pulleys and

the countershaft are so mounted as to freely revolve upon the end of the upright arm. Power is applied by means of an endless belt, extending over said conical pulley at one end and another conical pulley at the axis of said upright arm, which latter pulley is caused to revolve by an electric motor or other source of power, separately mounted. This whole device permits the operator to move the cutter head and its tool over the work below it, retaining at all times a fixed tension upon the driving belts.

Braren's United States application in interference here discloses a device for "transmitting power with a single driving means from a stationary shaft to a movable shaft," and is illustrated by an adaptation to an engraving machine. The drawings disclose a cutter head, supported by a pantograph arm, with a rotating central spindle and a chuck. The spindle is caused to rotate by a horizontal pulley attached thereto. An endless belt is carried around this pulley, over idler pulleys, then down to a driving pulley mounted on the axis of an upright vertically swingable arm, which bears a counterweight at its lower end, below its axis. The cutter head is attached to the said upright by an adjustable connecting rod. By various flexible connections, the cutter head can be moved over the work, in any direction, maintaining a uniform tension upon the driving belt at all times. The claims are introduced by the words: "In an engraving machine and the like."

Braren's German application No. D–42851 bears the title: "Single belt drive for radially movable spindles." It recites that the object of the invention is to remove the defects in transmitting power by a belt which does not change in length, from a source of power to a radially movable spindle, and that it is proposed to do this by certain mechanical arrangements which are briefly described as follows: The working spindle is attached to a horizontally rotating pulley, which pulley is suspended from the end of a horizontally extending connecting arm. This arm, in turn, is supported upon the upper end of a vertically movable upright, counterweighted at its lower end, below its axis. An endless belt extends from a pulley mounted on a countershaft extending through the axis of the upright, over idlers at the top thereof, and then horizontally around the spindle pulley. By a proper arrangement of hinges and joints, the radially movable spindle may be moved over any surface, in any direction, without disturbing the tension of the driving belt. There is no pantograph arrangement in this disclosure. The claims are as follows:

"1. Single belt drive for radially movable spindles, characterized by the fact that the spindles, the movements of which in the plane at right angles to the spindles axis cause no variation in the length of the belt, can also be moved in the direction of the spindle axis without varying the length of the belt.

"2. Single belt drive according to claim 1, characterized by the fact that the belt is conducted from the rigid driving disc (3) over two idle rollers (7 and 8) to the driven movable disc (1), and that the idle rollers are maintained in proper position through articulated connecting rods (12 and 16) between the fixed point or between the driven spindle and said idle rollers.

"3. Single belt drive according to claim 2, characterized by the fact that the two idle discs (7 and 8) are mounted in a carrying arm (9) which is carried swingably at right angles to this bearing by a carrying rod (12) arranged rotatably about the driving axis (4), and that the rod (16) rotatably and articulately connected with the spindle is at its other end rotatably arranged in the carrying arm (9) in such manner that the axis of rotation passes through the point at which the belt coming from the spindle is normally tangent to the idle discs.

"4. Single belt drive according to claim 2, characterized by the fact that a counterweight is provided for balancing the displaced parts upon angular inclination.

"5. Single belt drive according to claim 2, characterized by the fact that the connecting rod 16 between the driven spindle and the idle rollers is arranged to be axially fixed but radially rotatable.

"6. Embodiment of the single belt drive according to claim 2, characterized by the fact that the two idle discs (26, Fig. 5) are mounted on a carrier (32) which is carried swingably at right angles to this mounting by an axis (31) arranged at a distance from the center (25) of the driving disc (24) equal to the radius of the idle rollers, and that the rod (27) which is rotatably and articulately (as at 29) connected with the spindle (21) at a distance from the driven disc (22) equal to the radius of the idle rollers, is at its other end rotatably arranged about the axis (28) of the idle rollers (26)."

■ There are two preliminary questions raised by appellee. It is first contended by him that Braren does not disclose the subject-

matter of the counts here in his German application D-42851, because his device there was driven by one belt, while in Horner's device, two belts are used. The Board of Appeals held: "There is no question that Braren can make the claims in issue, so far as his United States application is concerned, but his case depends upon the data of his German application which contains no reference to an engraving machine, a cutter head or a pantograph." As we have already seen, Braren uses a single belt drive in both his United States application and said application No. D-42851. The interference was framed with this in mind. No motion was made by Horner in the Patent Office to dissolve the interference on the grounds that Braren's application did not read on the counts. No such point having been made, and Horner having failed to question the finding of the Board of Appeals in this matter, he cannot now be heard to make this contention. If he is, therefore, precluded from now raising this point on Braren's United States application, he should likewise be precluded, in this interference, from questioning the sufficiency of Braren's said German application on the same point.

It is next argued by Horner that Braren, having failed to appeal from the decision of the Board of Appeals on counts 4, 6, and 7, here involved, must be held to be estopped from questioning the decision of the said board in awarding priority to Horner on counts 1, 2, 3, 5, and 8, which, it is claimed, cover the same subject-matter. In support of this position, Brenzinger v. Thornburgh, 52 App. D. C. 298, 286 F. 637, is cited. In that case the court held that the same elements were included in all the claims and, hence, held that all should be appealed to preserve the appellant's rights. Here, however, it is manifest that the same elements are not involved. Claims 4, 6, and 7, of which claim 4, hereinbefore quoted, is typical, all recite, as an element, a pantograph structure. While it is true Braren's United States application discloses a pantograph arm, his German application D-42851, which he desires the advantage of, shows no such structure. As the Patent Office framed certain of the counts to include the pantograph element, and certain as not including it, Braren had a right to abandon his claim under the former. The counts of the interference did not all include the same elements, and, in this respect, the Brenzinger Case, cited, is not in point.

The question arises whether the German application, No. D-42851, of Braren, is a constructive reduction to practice of the invention in issue. The Board of Appeals held that the counts in issue are limited to an engraving machine, including a cutter head, and, in some counts, a pantograph. This contention is reiterated by the appellee here. The appellant, on the other hand, argues that the words of the appealed counts, "An engraving machine and the like," are introductory only; that if the words "engraving machine" are words of limitation, the words "and the like" are broad and inclusive, and comprehend appellant's disclosure; that the real invention is a belt drive where the tension of the belt is kept uniform, and does not lie in an engraving machine, a cutter head, or a pantograph.

In order to determine the exact questions involved, it is necessary to consider somewhat the state of the art at the time the Horner and Braren applications were filed, so that some understanding may be had of the real merits of the invention attempted to be outlined in the interference counts. A number of reference patents are included in the record, cited, as we are advised, on the original and unamended Braren application. These disclose, as in Moore, No. 834,995, of June 26, 1888, in a carving machine, a revolving cutter head, mounted upon a swingable arm, with lateral and vertical motion. Behee, No. 799,825, of September 19, 1905, shows the same with, in addition, a jointed or pantograph arm. Robertson & Frazier, No. 1,237,388, of August 21, 1917, discloses a combination of a pantograph, a revolving cutter and belt drive for the cutter in a machine adapted to milling and other like work. Other references show similar disclosures. There was therefore nothing new at that time in a revolving cutter, a belt drive therefor, a swingable arm or a pantograph to support the same, or in a combination to utilize the same in connection with a cutting, milling, or similar tool, which would include an engraving tool.

The invention here is thus described by the examiner:

" * * * The invention consists of the combination in an engraving machine of belt driven mechanism for the cutter head, so mounted that when the cutter head is moved about there will be a minimum of variation in tension on the driving belt or belts. This is effected by pivotally mounting the moving parts concentric with the belt pulleys so that the distances from center to center are maintained constant."

Throughout the record testimony it appears that both the parties to this interfer-

ence had in mind that the essence of the invention was a "new drive" for machines of the type of engraving machines. Horner, in his testimony, repeatedly refers to his invention in this way. For instance, in the book which was kept by him, and in which he made notes of his first 1–S engraving machine, he refers to the date, February 7, 1923, the purchaser of the machine, and makes a notation covering the whole item, "New Drive." He states, also, that after certain machines corresponding to Exhibits 3, 4, and 5, were shipped out, there was found to be trouble with the operation of the drive, because of the fact that the pantograph dragged the weight of the motor around with it, which made it clumsy, and because the device was not counterbalanced. The invention which was afterward disclosed, and which resulted in Horner's patent, was to correct these defects, and is thus described by the witness Gustafson:

"The first machine that was built was driven by motor mounted on a motor base at the outer end of the swinging arm, this arm being mounted at the top of the column or frame. On this first design the swinging arm was mounted on a pivot placed in a recess in the column. Later this was altered and the swinging arm was mounted between two lugs or projections on the column. Later the design was changed and the motor mounted on a plate at the bottom of the column. I don't know whether it requires any more description than that. I guess that gives in a general way the important changes made."

Again Gustafson said, in referring to these changes, "We changed the drive and intended to change the pantograph, making it a better machine naturally." Gustafson, at that time, was in charge of the engineering work for the Gorton Machine Company, where Horner was employed, and in which the new device of Horner was being perfected.

From this examination of the state of the art, and from the record testimony, it is quite apparent that the only novelty in the device described in the counts of the issue is the arrangement of the drive for a cutter head which consists in a counterbalanced upright and an arm holding the cutter head, with a belt drive so arranged as to remain in a fixed tension wherever the tool being used by the operator may be placed. Whatever may be said as to the elements which make up the combination, the result attained is an improved drive.

We come then to the inquiry whether the expression in the counts in issue "an engraving machine and the like" is to be construed as a limitation upon the counts or as introductory words only; whether they shall be considered as confining any device to be included within their scope to one which is expressly an engraving machine. We understand the tribunals of the Patent Office have so held, and having so held have concluded that Braren's second German application, not being expressly confined to an engraving machine, cannot be held to be within the scope of the counts at issue.

We are unable to concur with the tribunals of the Patent Office in this respect. As we have seen, there is nothing about the scope of the invention in issue which depends upon its use in connection with an engraving machine. The drive being the important matter, the device might equally well be used for an engraving machine, a milling machine, a carving machine, or any other machine which may use a cutting tool held in a chuck and operated by a revolving spindle. The counts of the interference ought to be read broadly and not narrowly and with limitations not justified by the nature of the invention disclosed. Stern and Huether v. Schroeder et al., 36 F. (2d) 518, 17 C. C. P. A. 690; Slattery v. Larner, 36 F.(2d) 298, 17 C. C. P. A. 725.

We are of opinion, also, that the introductory phrase, "in an engraving machine and the like," is not a part of the subject-matter of the counts in issue, but, under the facts in this case and the authorities, is introductory merely.

In Stearns v. Russell (C. C. A.) 85 F. 218, 224, a patent for a device used in the process of pill-dipping was involved. The claims in issue opened with the words, "In pill-dipping mechanism." Taft, Circuit Judge, in writing the opinion of the court, said:

"But it is said that the claims of the patent in question here do contain a suggestion of such a combination in the opening words, 'In pill-dipping mechanism.' We think these words are only used to define the useful purpose to which the patentee intended his device to be devoted, and cannot bear the construction by which all the other substances and parts used in dipping pills may be considered as making up the combination claimed."

In Sly Mfg. Co. v. Russell, 189 F. 61, 64, the Circuit Court of Appeals of the United States for the Sixth Circuit was considering

364

a patent claim which began as follows: "1. In a rotary crusher." The court said:

"The changes by which it is contended that applicant limited the claim in question to the crusher feature merely are, generally speaking, eliminating therefrom the words 'and separator' following the word 'crusher' in the reference to the device, and in omitting, in the redrafted claim, the words descriptive of the detailed construction of one of the chambered heads—'The chamber in one of the heads divided into compartments by radial partitions; holes in the lining plate over incline in the said compartment.' In our opinion the applicant did not thereby abandon the separating feature and limit his patent to the crushing element. The mere use of the word 'crusher' in the amended claim is by no means conclusive of an intent to limit the protection of the patent to the crushing feature. The introductory phrase is not an element of the combination, and does not necessarily limit the claim."

In Nye Tool & Machine Works v. Crown Die & Tool Co. (C. C. A.) 292 F. 851, 852, claims were involved, the introductory language of which was, "In a machine for serrating the thread-forming cutters of screw-threading dies." Evans, Circuit Judge, delivering the opinion of the court, said:

"Some effort has been made by counsel for appellee to distinguish the two patents because of their difference in name. It is claimed that one covers a 'cut-back die thread machine,' while the other is for a 'machine for serrating the thread-forming cutters of screw-threading dies.' It is not the title that interests us, but rather the elements in the combination that go to make up the claim. Courts cannot place premiums upon tongue-twisting combinations of words that merely evidence the ingenuity and acuteness of a linguistic gymnast. All the patents under consideration cover combination claims, and the most that the preliminary words can accomplish is to clarify or give significance to the language used in describing the individual elements. Schram Glass Mfg. Co. v. H. Brooke Glass Co., 249 F. 228, 161 C. C. A. 264."

In Langmuir v. De Forest (D. C.) 18 F. (2d) 345, 346, certain of the counts in issue were introduced by the words, "In a radio signaling system." In that case the court, in its opinion, discusses the subject-matter of the interference, and the results to be obtained by the use of the device, the subject of the interference counts, and then makes the following statement:

"Nor is the introductory clause, 'in a radio signaling system,' an element of the combination set out in the claims. Moreover, it does not convert the claims into applications of the feed-back circuit to a radio signaling system. Claims so limited constituted the subject-matter of interference No. 41,223 between Langmuir and Armstrong, in which the latter prevailed. It does not limit the invention defined by the actual combination claimed."

The decree was affirmed in Westinghouse Elec. & Mfg. Co. v. DeForest (C. C. A.) 21 F.(2d) 918.

In Ford Motor Co. v. Parks & Bohne, 21 F.(2d) 943, 946, the Circuit Court of Appeals of the Eighth Circuit had before it claims with the introductory words, "An automobile transmission band." The court said:

"This phrase we think imports nothing by way of structural elements into any of these claims, nor does it make them other than claims to a strap brake with a detachable ear. These words merely state the environment in which the device is to be used; and, in the language of then Circuit Judge Taft, in Stearns v. Russell (C. C. A.) 85 F. 218, 'define the useful purpose to which the patentee intended his device to be devoted.'"

These cases, we are of opinion, are in point here and are sufficient authority, in view of the facts disclosed by this record, to justify the conclusion that the words, "in an engraving machine and the like," as used in the counts in issue here, are introductory only, and should not be considered as limitations of the subject-matter of the issue. It is true, as stated by the examiner of interferences, that in some cases courts have held that similar introductory words should be considered as limitations. However, we think it may be safely said that in all such cases an examination of the facts disclosed by the record will show that the words thus considered as limitations were an essential element in the novelty of the device and of the invention in issue there. No such contention is properly made here, as it is obvious that if there be invention, it is not in the construction of an engraving or similar machine, but in the drive by which such machine is operated.

Even if it were conceded that the words "in an engraving machine" might be treated as a limitation in this case, the following words, "and the like," must be construed as justifying a broad construction of such limitation. The word "like" is thus defined in 2

Bouvier's Law Dictionary (Rawles 3d Ed.) page 1998:

"Like. Equal in quantity, quality, or degree, exactly corresponding. Badger v. Daniel, 79 N. C. 387. Like does not necessarily mean the same in all parts; Houghton v. Field, 2 Cush. [Mass.] 145. Like offence. Sameness in all the essential parts. Com. v. Fontain, 127 Mass. 452."

In Diamond State Iron Co. v. Giles, 7 Houst. (Del.) 557, 11 A. 189, 195, an ordinance of a city was up for construction, and the question arose as to whether the ordinance was sufficiently broad in its language to include a building only one story in height with a trussed roof. In a suit for damages caused by the collapse of a wall of said building, the same being intended to be used for a rolling mill, the question arose whether the language of the ordinance providing that all buildings having trussed roofs, "such as churches, public halls, and the like," being of certain dimensions, should be of certain thicknesses, included the structures in which the plaintiff in error was injured. The court said:

"The words 'and the like,' occurring after the particular buildings or structures mentioned, cannot properly be interpreted as limiting the buildings having trussed roofs to uses similar to the uses to which churches, public halls, theaters, and restaurants are particularly appropriated, but are meant to give extension to the uses to which buildings having trussed roofs may be properly applied, and protection to persons properly and lawfully in any such buildings having trussed roofs, whatever their lawful uses may be, was as much intended by this provision of the ordinance as it was to the persons who might be in churches, public halls, theaters, or restaurants."

In the same way the words "and the like," in these counts, must be broadly construed, and as so construed, in our opinion, are broad enough to cover any machine which performs functions similar to an engraving machine, such as milling, cutting, and other like operations. In fact, Horner so understood it, for we find in his specification in interference here the following language:

"An object of the invention is to provide improvements in the mounting and control of the cutter heads of *milling machines and the like, such as so-called engraving machines,* wherein the cutter head is moved over the work by a so-called tracer, in following a pattern, through the medium of any suitable pantograph arrangement or the like, with the ends in view, among others, of enabling the milling tool or cutter to reproduce the pattern on work having a curved or spherical surface. * * *" (Italics ours.)

Braren was entitled to any use of his machine which was disclosed upon the face of his German application No. D–42851. In re Crowell, 39 F. (2d) 681, 17 C. C. P. A. 1009; In re Smith, 36 F. (2d) 302, 17 C. C. P. A. 644; In re Downs, 45 F. (2d) 251, 18 C. C. P. A. ——; Kisovitz v. Rosenberg, 50 App. D. C. 214, 269 F. 866; Deitel v. Trading Co. (C. C. A.) 37 F. (2d) 41.

Braren's said German application No. D–42851 plainly disclosed a device which will perform all the functions which are disclosed by the interference counts, 1, 2, 3, 5, and 8. This being true, under the authorities, there is no reason why he should not have the benefit of his said disclosure. In view of our conclusion as to said German application No. D–42851, it will not be necessary for us to discuss the various questions presented as to the applicability of the German application No. D–42050.

The decision of the Board of Appeals is reversed as to said counts 1, 2, 3, 5, and 8, and priority is awarded to the party Braren as to said counts.

Reversed.