## CLEMENT v. ROBERTS.

(Court of Appeals of District of Columbia. Submitted March 23, 1921. Decided June 6, 1921.)

No. 1421.

1. Patents ⬅90(3)—Perfecting improvement not required by the issue in interference is not diligence.

The time spent by an applicant after conception of the invention in developing an improvement, so as to make the operation fully automatic, does not constitute diligence on his part, where the issue did not call for automatic operation, and was fully met by his disclosure without the improvement.

2. Patents ⬅106(2)—Issue in interference held not to cover improvements on which applicant was working.

A count in interference for an invention in automatic telephone exchange system, involving means to make and break the metallic circuit, held, when given the broadest interpretation of which it reasonably admits, not to require automatic operation of the make and break, so that the attempt to develop an automatic make and break operation was not due diligence in the development of the invention.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Commissioner of Patents.

Interference proceeding between Edward E. Clement and John G. Roberts. From a decision of the Commissioner of Patents, awarding priority of invention to Roberts, Clement appeals. Reversed.

Horace A. Dodge, of Washington, D. C., and William G. McKnight, of New York City, for appellant.

E. W. Adams and G. Willard Rich, both of New York City, for appellee.

VAN ORSDEL, Associate Justice. This appeal is from the decision of the Commissioner of Patents awarding priority of invention to appellee, Roberts, the junior party. The interference is in seven counts, of which count 1 is illustrative:

"1. In an automatic telephone exchange system a plurality of subscribers' stations and metallic circuit lines extending thence to a central office, automatic switching apparatus for interconnecting the lines at the central office, a source of current connected in the metallic circuit of a subscriber's line, means at the substation to make and break the said metallic circuit at will, the makes and the breaks being of varying but predetermined duration and means at the central office responsive to such makes and brakes in the metallic circuit to actuate, control and release the automatic switching apparatus and also to ring the wanted subscriber, substantially as described."

Roberts is conceded to have been the first to conceive the invention; hence the case turns upon his diligence at or just before Clement came into the field. The dates are not controverted. Roberts is awarded January 24, 1905, for disclosure, based upon his blueprint Exhibit 3 of that date, upon which the counts of the interference may be clearly read. He filed March 10, 1906.

We agree with the Board of Examiners in Chief that Clement constructively reduced the invention to practice in an application for patent filed August 31, 1905. His present application was filed December 9, 1905, but the former application disclosed the invention here in interference.

The Clement application relied upon for disclosure required the intervention of an operator at the central station to connect the call with an automatic first selector switch, through which the call could be extended automatically to the number desired.

Roberts, on the other hand, contends that his system required a special form of interrupter, in order that the impulses could be accurately timed. A drawing disclosing the interrupter was completed September 7, 1905. It is upon this that Roberts claimed the exercise of diligence at and prior to Clement's entrance into the field; but we find nothing in the claims limiting them to a full automatic system, or requiring a direct automatic connection between the calling party and the first selector switch. On this point the Board of Examiners in Chief said:

"We do not find anything in the issues that limits them to a full automatic system or to a direct connection to the subscriber's line with the first selector switch. The claims cover only a means for controlling a series of automatic switches for extending a call over a metallic or two-wire circuit from the calling subscriber to the called subscriber, and when the central operator plugs in the operation of the switches is exactly as specified in the issues. We

regard the issues as covering specific means of operating the switches and extending the call, whether it is used in a semiautomatic or a full automatic system."

[1] Roberts had the invention of the issue complete in January, 1905, and the time he consumed until September of the same year was in perfecting an improvement not required by the present issue. This conduct on the part of an inventor does not constitute diligence. In Lotterhand v. Hanson, 23 App. D. C. 372, this court, considering a similar situation, said:

"The excuse given by him [Lotterhand] or for him is that he desired to invent a new typewriter wherein to introduce his invention, and thereby to avoid the necessity of using any of the existing typewriters. In other words, having made one invention, complete in itself and ready to be patented, if he did actually make it, or have a conception of it, he deliberately waited for a year or two years, until he should have time to make another invention to combine with it, and wherein to use it to the best advantage for himself. But this excuse cannot be accepted under any of the authorities as explaining the absence of diligence, while another man was actively in the field of invention at the same time. To delay one invention for the sake of another projected invention to be used in connection with it, and which might never be realized, cannot be construed in the patent law as an exercise of due diligence."

[2] Following the policy of this court in giving the claims the broadest interpretation of which they will reasonably admit (Miel v. Young, 29 App. D. C. 481; Kirby v. Clements, 44 App. D. C. 12; Monte v. Dunkley, 46 App. D. C. 70), we are not at liberty to inject the limitation contended for by Roberts into the claims to meet the exigencies of his case.

The decision is reversed.

Reversed.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.