## AUTOMATIC ELECTRIC CO. v. DYSON.

## DYSON v. AUTOMATIC ELECTRIC CO.

(Court of Appeals of District of Columbia. Submitted May 9, 1922. Decided June 5, 1922.)

Nos. 1493, 1494

**1. Patents ⬡195—Acceptance of option by assignee relates back to contract.**

The acceptance by an assignee of an option given him by an inventor for the purchase of the patent rights relates back to the date of the option contract.

**2. Patents ⬡83—Diligence of assignee and not of inventor governs rights.**

Where an inventor has assigned all his rights to another and has placed the control of invention into the hands of the other, the diligence of the assignee, and not the inventor, is controlling, since the assignee is the real party in interest.

**3. Patents ⬡83—Assignee and original inventor held both wanting in diligence.**

Evidence that an inventor had given another an option on all of his inventions, and that for nine months after the conception of an invention in controversy in interference proceedings the assignee failed to indicate whether he would exercise his option with reference to that invention or not, giving as his only excuse that he was busy, and in that time the inventor did nothing except to write two letters urging a decision on the exercise of option, held to show that neither the assignee nor the original inventor used reasonable diligence in adapting and perfecting his invention within the meaning of Rev. St. § 4920 (Comp. St. § 9466).

**4. Patents ⬡90(3)—Delay of six months in filing application held want of diligence.**

Delay by an inventor of six months after conception of the invention during which attention was deliberately given to another invention in no way imperiled by interference or otherwise held such want of diligence as to defeat the right of the inventor to claim the invention in interference proceedings.

Appeal from the Commissioner of Patents.

Two separate interference proceedings between the Automatic Electric Company, as assignee of Herbert L. Fish, and Alfred H. Dyson. From decision awarding priority in the first proceedings to Dyson and in the second proceedings to Fish, the unsuccessful parties separately appeal. Reversed as to decision awarding priority to Dyson, and affirmed as to priority awarded to Fish.

C. C. Bulkley, of Chicago, Ill., for Automatic Electric Company.

C. B. Camp and G. A. Yanochowski, both of Chicago, Ill., for Dyson.

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROBB, Associate Justice. These are appeals from decisions of the Patent Office in two interference proceedings, in the first of which priority was awarded the junior party, Dyson, and in the second to the senior party, Fish.

The subject-matter of the first interference, No. 1493, is an improvement in automatic telephone systems and specifically concerns the arrangements for returning the switches to normal at the end of a conversation. There are three counts involved, but we do not deem it necessary to repeat them here.

Fish relies upon his filing date of December 22, 1905. As to Dyson, he was employed by Milo G. Kellogg, who was the dominating spirit of the so-called Kellogg Organization, which consisted of well-known telephone engineers and experts. Dyson's employment contemplated that he should design and develop apparatus and systems of telephony, particularly those branches relating to so-called semiautomatic and full automatic systems, together with work relating to the prosecution of applications for letters patent upon all inventions made by him and others. In his testimony Mr. Dyson referred to the Kellogg Organization as a "patent factory, in that the work performed by its organization, as such, consisted principally in the invention, development, and securing of patent rights on apparatus and systems relating to the art of telephony, and principally to the branches of such art which related to the so-called automatic and semiautomatic methods. * * * Mr. Kellogg had in his employ constantly, or for various periods of time and various duties, a number of well-known and efficient patent attorneys." Prior to May, 1905, Mr. Dyson entered into a contract with Mr. Kellogg under which the latter was to have an option on the numerous inventions made by Dyson, and from the correspondence it appears that Kellogg was to accept or reject these inventions within a time certain. On May 5, 1905, Mr. Dyson submitted to Mr. Kellogg for acceptance or rejection a number of inventions, including the one here involved. On November 14, 1905, no action whatever having been taken by Mr. Kellogg or the Kellogg Organization concerning these inventions, Mr. Dyson wrote Mr. Kellogg and invited his attention to the terms of their contract, asking that he be given information as to which of the inventions would be accepted. This letter inspired no action on the part of Mr. Kellogg or the Organization, and on February 2, 1906, Dyson again wrote Kellogg, directing attention to Kellogg's failure to respond to the prior letter and stating that, inasmuch as he (Dyson) might "have serious trouble in proving diligence in case of interference," Kellogg should "either accept or reject these inventions." On February 13th following the Kellogg Organization recommended the acceptance of a number of Dyson's inventions, including the one here involved, and on February 24th this invention was accepted. On the day following the draftsman commenced making drawings and on March 24, 1906, the application was filed.

The question with which we now are concerned, therefore, is whether reasonable diligence was being used, to paraphrase the provisions of section 4920, R. S. (Comp. St. § 9466), when Fish entered the field in December, 1905.

[1] In the first place, the acceptance of the option by Mr. Kellogg completed the contract between the inventor and his assignee (Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Campbell v. Rawlings, —— App. D. C. ——, 280 Fed. 1011, present term), and related back to the date of the contract. The patent, if it had issued at all, would have issued to the assignee. In other words, the real party in interest was not the inventor, but the assignee.

[2] We have held that, where an inventor, as here, has placed the control of the invention in the hands of another, the conduct of that party is controlling on the question of diligence. Robischung v. Handiges, 36 App. D. C. 97, 99; Dutcher v. Jackson, 44 App. D. C. 465, 468. This is a reasonable and equitable rule, for an inventor who assigns his invention and places it under the control of another is in no position to complain because the rule or measure of diligence in an interference proceeding is applied to that party, as the real party in interest.

[3] Applying that principle to the facts of this case, we find that there was no diligence whatever on the part of Mr. Kellogg, the real party in interest, from May, 1905, until February, 1906, a period of nine months, nor was there any diligence from the time of the filing of the Fish application in December, 1905, until February following. The only excuse offered—that some time in December, but just when does not appear, the Kellogg Organization was very busy—is not sufficient. No excuse whatever is offered for the failure of the assignee to act during the period between May and the filing date of Fish, and where, as here, a so-called patent factory gets possession of a large number of inventions in a particular art, there should be no relaxation in the rule of diligence. The fact that Dyson's application was filed within one month after the time it was accepted by the Kellogg Organization tends strongly to prove that there was unnecessary delay preceding the acceptance. This is not a case where an inventor "was using reasonable diligence in adapting and perfecting" his invention, within the meaning of section 4920, R. S., but rather is it a case of deliberate and unnecessary delay on the part of the owner of the invention in filing the application. And, should we consider the conduct of Dyson as material, the result would be the same, because all he did was to write two letters to his associates for the obvious purpose of making a record. There was nothing to prevent him at any time from filing an application if he so desired, and had he so filed he could have assigned the application as readily as he might have assigned the invention itself. As we many times have said, an invention benefits no one unless it is made public, and the rule of diligence should be so applied as to encourage reasonable promptness in conferring this benefit upon the public.

It results that the decision in No. 1493 must be reversed, and priority awarded Fish.

[4] In No. 1494 the Examiner of Interferences awarded priority as to the nine counts of the issue to Fish, the senior party. The Examiners in Chief affirmed this decision as to counts Nos. 1 to 7, inclusive, but reversed as to counts Nos. 8 and 9. Fish appealed as to counts

Nos. 8 and 9, and the Commissioner reversed the decision as to those two counts and awarded priority to him, on the ground that Dyson was lacking in diligence. In this case there was a delay between November, 1905, and May, 1906, during which time, according to the finding of the Commissioner, which we accept, "attention was deliberately given to another invention or inventions in no way imperiled by interference or otherwise, while steps looking to the completion of the invention Dyson had completely conceived in November, 1905, were not taken as promptly as they might have been." Considering the circumstances surrounding this delay, we agree with the Commissioner that it was inexcusable, and we therefore affirm the decision.

Reversed as to appeal No. 1493.

Affirmed as to appeal No. 1494.