## HEADLEY & THOMPSON v. BRIDGES.

### Patent Appeal No. 2872.

*Court of Customs and Patent Appeals.*
*April 29, 1931.*

Byrnes, Stebbins, Parmelee & Blenko, of Pittsburgh, Pa. (Clarence P. Byrnes and Earle L. Parmelee, both of Pittsburgh, Pa., of counsel), for appellant.

Emery, Booth, Varney & Holcombe, of Washington, D. C. (Amasa M. Holcombe and Charles F. Miller, Jr., both of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge. ·

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Law Examiner, dissolving an interference as to certain counts on the ground of nonpatentability.

The cause was advanced upon our docket in order that it might be heard upon the single question of jurisdiction; it being agreed that, if the court finds itself without jurisdiction to determine now the question of patentability, the appeal must be dismissed to the end that proceedings in the Patent Office may be resumed.

The motion to advance is accompanied by a memorandum of facts, agreed to by counsel for the respective parties, from which it appears that 111 counts were tentatively embraced in, or suggested for, the interference.

Of these, 78 are involved in the jurisdictional question. All of these 78, except No. 7, were twice rejected by an Examiner in ex parte proceedings without being suggested for the interference, but, upon appeal in the ex parte cases, the decisions of the Examiner were reversed, and the claims, which became

the counts, were allowed to Headley & Thompson, by that tribunal of the Patent Office, then designated as the "Board of Examiners-in-Chief"; the proceedings having been prior to the Act of March 2, 1927, which act changed the designation to that of "Board of Appeals."

Following this reversal, the interference was declared with Bridges, on September 3, 1927, being interference No. 55,728. The counts not here involved in the jurisdictional question were subsequently added.

■ Both parties moved to dissolve; Bridges upon the ground of nonpatentability. Under the rules of the Patent Office, the motions to dissolve were referred to a Law Examiner. This official sustained the Bridges motion, and appeal was taken to the Board, which had then become, by statute (Act of March 2, 1927), the Board of Appeals. That tribunal affirmed the decision of the Law Examiner, and it was from the Board's decision that the present appeal was taken to this court.

Therefore, as to the 78 counts, the question of priority has never been before the tribunals of the Patent Office, and there has been no adjudication thereon. The effect of holding them nonpatentable in the interference proceeding has been to dissolve the interference as to them, and it stands dissolved in that respect, unless we should find that we have jurisdiction to review the question here, and should later find them patentable. Field v. Colman, 47 App. D. C. 189.

The 33 counts that are in the interference have yet to be tried in the Patent Office upon the issue of priority, and are not claimed to be involved in the question of jurisdiction now before us.

The recent appeal in Sundback v. Blair and Perrault, dismissed by us February 25, 1931, 47 F.(2d) 378, 380, 18 C. C. P. A. ——, the opinion being by Judge Lenroot, involved the question of jurisdiction, but arose upon a state of facts somewhat different from the facts of the instant case.

In the brief for Bridges in the present case, it is said, referring to the Sundback Case:

"The decision of the Board of Appeals sustaining the decision of the Examiner in the interference automatically dissolved the interference, the motion being effective as to all of the counts therein. Hence in the appeal to this Court Sundback had no standing whatever as a party to an interference because that interference was dissolved in toto with no decision on the issue of priority of invention. He had no standing before this Court as an applicant appealing from the decision of the Board of Appeals holding the claims unpatentable, because the Examiner had not twice rejected the claims on that ground.

"Thus on comparing the facts in the Sundback v. Blair and Perrault Case with those of this appeal, the questions of jurisdiction as presented by the respective records before the Court are fundamentally different, and it is not surprising that the Court held that it did not have jurisdiction of the Sundback Case, because there had not been a second rejection by the Examiner of the claims and there had been no award of priority; but this decision does not control the present case and the reasoning upon which it is based would seem to require an opposite holding as applied to the facts presented upon this appeal."

It will be observed, however, from a reading of it, that our decision in the Sundback Case did not rest upon the matter of there not having been two rejections by the Examiner. This element was nowhere mentioned in the opinion, nor was it a factor in deciding the case.

Upon the contrary, under the reasoning of that case, the number of rejections would not have affected our conclusion, which rested solely on the ground that the appeal then before us was not from a decision which the Board of Appeals was required by statute to make; the appeal to the board being from a decision of a Law Examiner, who is not a statutory tribunal. We did not specifically refer to the interlocutory character of the motion to dissolve, nor to the fact that there had been no adjudication of priority. We did say therein:

"Nothing herein should be construed as intimating that, if the decision of the Board of Appeals had been based upon an appeal to it from a decision of a primary examiner or examiner of interferences, dissolving an interference, we would entertain jurisdiction. It is unnecessary for us to decide that question."

In the instant case the appeal to the Board of Appeals was also from a decision by a Law Examiner, and hence it might be held to be controlled by the Sundback decision. But arguments are here presented and questions are here raised, which were not there urged or discussed. These lead us to feel that we should here go further than we did in that case and determine whether we

have jurisdiction to pass upon and adjudicate the question of patentability in an interference proceeding in which there has been no award of priority by the Board of Appeals of the Patent Office.

Both parties are here insisting that we do have such jurisdiction.

The brief in behalf of Headley & Thompson, insists that the language of section 482, Rev. St. (35 USCA § 7), "precludes construing the word 'examiners' as applying to jurisdiction 'in interference cases,'" and presents argument on this insistence. The brief further says:

"Appellant has carefully reviewed the decision of this Court under date of February 25, 1931, in the case of Sundback v. Blair and Perrault, patent appeal No. 2599, Interference No. 55,743. It is respectfully submitted, however, that such decision is predicated on a judicial interpretation of sections 4904, 4909 and 4911 (35 USCA §§ 52, 57, 59a), without regard to the jurisdiction of the Board of Appeals as expressly set forth in section 482 of the Revised Statutes (35 USCA § 7).

"The words 'the decision of the board of appeals' as used in section 4911 are applicable to any decision which the Board of Appeals has the right by statute to enter in any case. Having been expressly given the statutory right under section 482 to review and determine decisions 'in interference cases,' the decision of the Board of Appeals in an interference case is subject to appeal to this Court."

The full text of section 482, Rev. St., as amended by Acts of March 2, 1927, § 3, and April 11, 1930, § 2 (35 USCA § 7), respectively, is as follows:

"The examiners in chief shall be persons of competent legal knowledge and scientific ability. The Commissioner of Patents, the first assistant commissioner, the assistant commissioners, and the examiners in chief shall constitute a board of appeals, whose duty it shall be, on written petition of the appellant, to review and determine upon the validity of the adverse decisions of examiners upon applications for patents and for reissues of patents and in interference cases. Each appeal shall be heard by at least three members of the board of appeals, the members hearing such appeal to be designated by the commissioner. The board of appeals shall have sole power to grant rehearings."

Prior to the Act of March 2, 1927, the statutes had provided: First (section 4909, Rev. St.), for appeals to the Board of Examiners-in-Chief from (a) the decisions of "Primary Examiners," twice rejecting applications for a patent, or for the reissue of a patent, (b) decisions of the Examiner in charge of interferences, in an interference case; second (section 4910, Rev. St.), for appeals to the Commissioner in person, "if such party is dissatisfied with the decision of the Examiners-in-Chief," and, third (section 4911, Rev. St.), appeals to the Court of Appeals of the District of Columbia from the decisions of the Commissioner in (a) ex parte cases involving applications for patents or reissue of patents, and (b) in any interference case by "any party aggrieved by" the Commissioner's decision.

The Act of March 2, 1927 (section 5) amended the existing law relating to appeals within the Patent Office by (a) providing a tribunal designated as the "Board of Appeals" instead of as theretofore the "Board of Examiners-in-Chief," and (b) by (section 6) repealing section 4910, Rev. St., thus eliminating appeals to the Commissioner in person. The law relating to appeals within the Patent Office is now embraced in section 4909, Rev. St.. (35 USCA § 57), which reads as follows:

"Every applicant for a patent or for the reissue of a patent, any of the claims of which have been twice rejected, and every party to an interference, may appeal from the decision of the primary examiner, or of the examiner in charge of interferences in such case, to the Board of Examiners in Chief, having once paid the fee for such appeal."

The Act of March 2, 1927 (section 8) also amended the law relating to appeals to, or proceedings in, the courts, by providing that they should be taken directly from the Board of Appeals. The law is now (amended by Act March 2, 1929, § 2) embraced in section 4911, Rev. St. (35 USCA § 59a):

"If any applicant is dissatisfied with the decision of the board of appeals, he may appeal to the United States Court of Customs and Patent Appeals, in which case he waives his right to proceed under section 63 of this title. If any party to an interference is dissatisfied with the decision of the board of appeals, he may appeal to the United States Court of Customs and Patent Appeals, provided that such appeal shall be dismissed if any adverse party to such interference shall, within twenty days after the appellant shall have filed notice of appeal according to section 60 of this title, file notice with the Commissioner of Patents that he elects to have

all further proceedings conducted as provided in section 63. Thereupon the appellant shall have thirty days thereafter within which to file a bill in equity under said section 63, in default of which the decisions appealed from shall govern the further proceedings in the case. If the appellant shall file such bill within said thirty days and shall file due proof thereof with the Commissioner of Patents, the issue of a patent to the party awarded priority by said board of appeals shall be withheld pending the final determination of said proceeding under said section 63."

It will be observed that section 4911, as quoted, contains the phrase: "* * * If any party to an interference is dissatisfied with the decision, * * * he may appeal. * * *" The prior language relating to interference appeals to the court was, "* * * Any party aggrieved by a decision * * * may appeal, * * *" (35 USCA § 59, note) but, as related to ex parte appeals, it was "dissatisfied with."

The phrase "is dissatisfied with" also appeared in the former section 4910, Rev. St., which section was repealed, being there used in connection with appeals from the Board of Examiners-in-Chief to the Commissioner. This change in phraseology in section 4911, Rev. St., is urged to have a significance. It will be hereinafter discussed.

By an Act of March 2, 1929 (45 Stat. 1475), the jurisdiction in patent appeals of the Court of Appeals of the District of Columbia was transferred to this court. By the terms of this act the latter court simply became the successor in jurisdiction of the former, and there is no language in the act which in any wise changed the character of such jurisdiction. There was nothing in the amendatory Act of April 11, 1930, which is here pertinent.

The jurisdiction conferred upon the Court of Appeals of the District of Columbia in appeals from the Patent Office was embraced in section 9 of the act creating that court, approved February 9, 1893, 27 Stat. 434-436, chapter 74 (35 USCA § 59, note). The section reads:

"The determination of appeals from the decision of the Commissioner of Patents, now vested in the General Term of the Supreme Court of the District of Columbia, in pursuance of the provisions of section seven hundred and eighty of the Revised Statutes of the United States, relating to the District of Columbia, shall hereafter be and the same is hereby vested in the Court of Appeals created by this act; and in addition, any party aggrieved by a decision of the Commissioner of Patents in any interference case may appeal therefrom to said Court of Appeals."

The foregoing section superseded the old provision of section 4911, Rev. St., which authorized appeals, except in interference cases, from the decision of the Commissioner of Patents to the Supreme Court of the District of Columbia by a party "dissatisfied with" the Commissioner's decision. This was by the Act of July 8, 1870. It seems that until the act of 1893, creating the Court of Appeals of the District of Columbia, there was no tribunal to which parties in interference cases might carry a direct appeal from the Commissioner's decision, and in the act of 1893 the jurisdiction of the said Court of Appeals was limited to two classes of cases, to wit:

(1) Ex parte cases brought by applicants for patents when the claims had been twice rejected.

(2) Interference cases in which the appealing party was "aggrieved by" a decision of the Commissioner.

Prior to the said act creating said court such proceedings as were had by the courts relative to interferences were proceedings in equity.

The Court of Appeals of the District of Columbia had occasion quite early in its existence to construe section 9, above quoted, and determine the question of its jurisdiction thereunder, in the case of Westinghouse v. Duncan, reported in 2 App. D. C. 131. From the syllabus of that case, we quote:

"1. An appeal does not lie to this court from a mere interlocutory or preliminary order or ruling of the Commissioner of Patents in an interference case, such as a ruling that there is or is not an interference, or an order refusing to investigate an alleged interference; but only from the final decision of the commissioner in such a case determining the question of the priority of invention.

"2. A decision of the Commissioner of Patents from which an appeal will lie to this court, can only be made after the primary examiner, and, on appeal from him, the board of Examiners-in-Chief, have considered the case and made findings therein."

In Podlesak v. McInnerney, 26 App. D. C. 399, the said Court of Appeals held that it would take jurisdiction to determine the question of the right of a party to make a claim, "as an ancillary question to be consid-

ered in according priority of invention," because such right "goes to the very foundation of an interference, for, if a party has not such right, the interference falls."

The said court consistently followed its holding in Westinghouse v. Duncan, supra, throughout the entire period of its jurisdiction over appeals from the Patent Office in interference cases, and again and again reiterated the doctrine that actions upon questions arising under motions to dissolve, except upon that of the right to make the claims, which is fundamental, are interlocutory proceedings, when unaccompanied by an adjudication of priority rendered in the manner required by the statutes. It also consistently and uniformly held that the court had jurisdiction, in such cases, only of appeals from the decisions by the statutory tribunals of the Patent Office adjudging priority. A review of the many cases is not deemed necessary here. Among them are Allen v. United States ex rel. Lowry, 26 App. D. C. 8; In re Fullagar, 32 App. D. C. 222; Cosper v. Gold, 34 App. D. C. 194; Carlin v. Goldberg, 45 App. D. C. 540; Parker v. Craft et al., 49 App. D. C. 88, 258 F. 988; Cowles v. Rody, 49 D. C. 135, 261 F. 1015.

The last three cases arose over the question of whether the appellate court had jurisdiction in appeals in interference cases where the tribunal of the Patent Office, from which the appeal to the court was taken, had held the claims nonpatentable without any award of priority. In each instance the court held that the finding of nonpatentability was an interlocutory matter, and declined to take jurisdiction.

The case of Allen v. United States, supra, is worthy of particular note, first, because of the comprehensive review of the patent statutes and Patent Office practice there given by Mr. Justice Duell of the Court of Appeals of the District of Columbia; and, second, because the case found its way to the Supreme Court of the United States and the principle of the issue here involved was there adjudicated. Lowry v. Allen, 203 U. S. 476, 27 S. Ct. 141, 144, 51 L. Ed. 281. The concluding portion of the opinion of the Supreme Court is:

"The statute is explicit. It limits the declaration of interferences to the question of priority of invention. Section 4904 provides that in case of conflict of an application for a patent with a pending application or with an unexpired patent (as in the case at bar), the Commissioner shall give notice thereof, 'and shall direct the primary examiner to proceed to determine the question of priority of invention.' And it is provided that the Commissioner shall issue a patent to the party adjudged the prior inventor, unless the adverse party appeals from the decision of the primary examiner or examiners in chief, as the case may be. The history of the sections and the rules are gone into at length by the court of appeals in its opinion. We need not repeat the discussion. It answers the detailed reasoning of plaintiffs in error. We concur with the views expressed, that the statutes provide only for appeals upon the question of priority of invention. Appeals on other questions are left to the regulation of the Patent Office under the grant of power contained in section 483."

It would seem that the doctrine of stare decisis applies in the instant case unless the Congress by subsequent legislation has changed the law.

In the briefs for both parties it is suggested that amendments to section 482, Rev. St., by the Act of March 2, 1927, § 3, when construed with sections 4904, 4909, and 4911, Rev. St., confer the jurisdiction it is here sought to have us take.

It is pointed out that in amending the said section 482 the word "review" was substituted for the word "revise," so that the Board is now clothed with authority "to review and determine upon the validity of the adverse decisions * * *," whereas the Examiners-in-Chief, before the amendatory act, had the duty "to *revise* and determine. * * *" (Italics ours.)

We are unable to see wherein the substitution of "review" for "revise" in the section defining the duties of the Board of Appeals affects our jurisdiction, which is the same in all respects as was that of the Court of Appeals of the District of Columbia, defined in section 9, supra, of the act creating that court, and now expressed in section 4911, Rev. St., supra.

It is suggested further that section 4911, Rev. St., now provides that any party to an interference who *"is dissatisfied with* the decision * * * may appeal, * * *" whereas it formerly read " * * * any party *aggrieved by* a decision * * * may appeal." (Italics ours.)

Here again we fail to see wherein the change in phraseology affects the matter of our jurisdiction. It is not the manner of expressing the state of mind of an appellant relative to a decision which fixes jurisdiction, but the nature of the decision itself

and, as of course, the source from which the decision comes.

The phrase "is dissatisfied with" relating to an ex parte appeal received construction by the Court of Appeals of the District of Columbia in Moore v. United States ex rel. Chott, 40 App. D. C. 591, 597, the court saying:

"The right of appeal granted by sec. 4911, Rev. Stat. U. S. Comp. Stat. 1901, p. 3391, is very broad, and embraces every application for patent, 'except a party to an interference' who 'is dissatisfied with the decision of the Commissioner.' We have held this to include any official action of the Commissioner which was decisive of an applicant's right to a patent, or which, in effect, operated as a rejection of the claims of the application. In the case of Re Mattullath, 38 App. D. C. 497, the court, speaking through its chief justice, said: 'The right to appeal from a final decision of the Commissioner of Patents is determinable by its substance and effect, rather than its form. Moore v. Heany, 34 App. D. C. 31–39; Re Selden, 36 App. D. C. 428–431.' "

The action of the Commissioner of Patents, complained of in the foregoing Moore Case, was, as has been stated, taken in an ex parte proceeding, and was a holding that an applicant was not entitled to a patent, although the Board of Examiners-in-Chief (now the Board of Appeals) had held otherwise. By reason of it being a final decision by the Commissioner of nonpatentability, the court took jurisdiction under the old section 4911, Rev. St. The words mean the same, it seems to us, in an interference proceeding, as they do in one ex parte, and the decision, which the party "is dissatisfied with," in order to be appealable to this court, must be a final decision with an award of priority.

We find nothing in the history of the legislation, and no authority has been brought to our attention, indicating that, as used in the statutes under consideration, there is any distinction between the phrases "aggrieved by" and "dissatisfied with" which affects the question of jurisdiction.

Had Congress had it in mind to change the jurisdiction in a matter so important and far-reaching as this, we feel that it would have done so in language so clear as to leave no question relative to its meaning, and would not have attempted to do so merely by changing "revise" to "review" and "aggrieved by" to "dissatisfied with."

The brief for Bridges suggests that, in view of certain amendments to section 482, Rev. St., by the Act of March 2, 1927, § 3 (35 USCA § 7), particularly that respecting the provision of former law whereby the Examiners-in-Chief were required to perform such duties as the Commissioner might assign them, the Board of Appeals, as therein created, now has jurisdiction only of appeals, therein provided for, and no longer may take jurisdiction of appeals arising simply under the rules and practice of the Patent Office and not authorized by statute, and says:

"Therefore, applying the doctrine of the Sundback case, the jurisdiction of the Board of Appeals under the present statute depends upon what interpretation be given to the words "adverse decisions of examiners"; and in this respect it is coextensive with that of the Court of Customs and Patent Appeals in appeals from the Patent Office. Accordingly, if the Board of Appeals renders a decision in a matter outside of its statutory jurisdiction, and 'if any applicant is dissatisfied with the decision of the Board of Appeals,' it would seem to be the duty of this Court to take jurisdiction and determine whether or not the Board of Appeals had statutory authority to decide the matter."

It does not seem to us that the decision as to our own jurisdiction in this case requires a determination of, or an expression upon, that issue. Whether the Board of Appeals had jurisdiction in the instant case under the theory upon which we are deciding the general issue is not here material, because it made no adjudication of the question of priority. Had it made such an adjudication, we might then have been confronted with, and have found it necessary to determine, the question of whether the proceedings back of it, and its own proceeding, were in accordance with the statute.

■ Following the long line of authorities cited, and finding no enactments which seem to alter the statutes therein construed, or to render permissible any change in those constructions, we adhere to the doctrine that the only question of which we have jurisdiction in interference cases is that of priority, and that the only appeals that we may entertain in such cases are appeals from decisions of the Board of Appeals of the Patent Office, making a final award thereof.

■ We further hold that determination of the patentability or nonpatentability in an interference case is an interlocutory proceeding, and we have no jurisdiction of an appeal from a decision upon it; no adjudi-

cation of priority having been made by the tribunal from which the appeal is taken.

We have not found it necessary to a decision of the issue here involved to review the rules and practice of the Patent Office, nor to discuss the respective functions of "Examiners," "Law Examiners," "Primary Examiner" and "Examiners of Interferences."

The appeal is dismissed for lack of jurisdiction, there having been no award of priority by the Board of Appeals.

Dismissed.