**FAGEOL v. MIDBOE.**

Patent Appeal No. 2924.

Court of Customs and Patent Appeals.

April 6, 1932.

See also 48 F.(2d) 944.

Strauch & Hoffman, of Washington, D. C. (James A. Hoffman, of Washington, D. C., of counsel), for appellant.

Redding, Greeley, O'Shea & Campbell, of New York City (Worthington Campbell, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

An interference was declared on September 21, 1926, by the United States Patent Office between the application of Rollie B. Fageol, the appellant, filed September 25, 1923, and a patent issued to the appellee Gabriel Midboe, No. 1,574,047, on February 23, 1926, which patent was issued upon an application filed February 29, 1924.

The invention here involved is a device for driving two rear axles on a six-wheel motor driven vehicle, by means of a single power differential supported by the chassis, and two propeller shafts extending therefrom to differentials situated on the rear axles and unsprung; the said shaft extending to the rear axle differential being supported by and journaled in the housing of the front axle differential.

Fageol's application originally had but one drawing which showed the axle differentials supported by the chassis, and sprung. After the issuance of Midboe's said patent, Fageol amended his application by adding thereto claim 1 of Midboe's patent. On November 24, 1926, Midboe moved to dissolve the interference on the ground that Fageol could not make the count.

In Fageol's original application, this language appeared: "This drive construction may be used in connection with unsprung drive axle housings or may be used in connection with drive axle housings which are secured to the vehicle frame."

Upon the strength of this language, the Law Examiner gave Fageol leave to file an additional drawing showing the axle differentials to be unsprung, which was done. Thereupon the Law Examiner overruled the motion to dissolve, which decision was affirmed by the Examiner of Interferences and, afterwards, by the Board of Appeals.

Both parties took testimony on the issue of priority. The Examiner of Interferences found that Fageol was entitled to priority. The Board of Appeals came to a contrary conclusion and awarded priority to Midboe.

Fageol having been successful before the tribunals of the Patent Office in his right to make the count, but unsuccessful as to priority, appealed, setting forth in the reasons for appeal filed the point that the Board of Appeals had erred, on the record, in awarding priority to Midboe.

On the argument here, both parties dis-

cuss the decision of the Patent Office tribunals in denying the motion to dissolve. While counsel for Fageol discuss the matter, they call attention to the fact that the right to make the count is not involved in this appeal, and is not a point "set forth in the reasons of appeal," as provided in section 4914, Rev. St. (35 USCA § 62). In that connection, our attention is called to our recent decision in In re Tucker, 54 F.(2d) 815, 19 C. C. P. A. ——, as seemingly an authority for confining the investigation here to the question of priority alone, excluding the point of the right to make the claim.

■■■ There is nothing in the doctrine announced in the case cited which prevents a finding by this court upon the question of appellant's right to make the claim. When an award of priority was made by the Board of Appeals, and an appeal was perfected from the decision making such award, the whole field of priority of conception, on the record, came before this court. Braren v. Horner, 49 F.(2d) 984, 18 C. C. P. A. 1408. In such a case the question of priority and all questions ancillary thereto are before the court. Gowen v. Hendry et al., 37 F.(2d) 426, 17 C. C. P. A. 789; Capek v. Levis, 55 F.(2d) 476, 19 C. C. P. A. ——.

■ It is well-settled law in this jurisdiction that the right to make the count or counts of the interference is a question ancillary to priority. Headley & Thompson v. Bridges, 48 F.(2d) 938, 18 C. C. P. A. 1331, 1336; Podlesak v. McInnerney, 26 App. D. C. 399; Wickers v. McKee, 29 App. D. C. 4, 19; Wintroath v. Chapman, 47 App. D. C. 428. If necessary to a decision of priority herein, therefore, the question of the appellant's right to make the counts of the interference will be here determined.

The appellant Fageol, in his preliminary statement, claims to have conceived the invention in issue during the "first part of the year, 1923." He claims no reduction to practice until the filing of his application on September 25, 1923. In his testimony he states that he conceived the invention in December, 1922, and made a drawing in January, 1923, which he exhibited to Arthur I. Marcum.

Considerable testimony is offered by the appellant in support of his contention of a conception in the early part of 1923. In view of our conclusions, however, as to other points involved in the case, it will not be necessary here to further discuss Fageol's testimony in this respect.

The appellee Midboe, in his preliminary statement, claims that he conceived the invention in issue here on or about October 4, 1922; that he made sketches on the 5th of October of the same year, completed drawings on October 25, 1923, and that a machine embodying the invention was made in October, 1924; no earlier reduction to practice being claimed.

Midboe testified that he had been employed by the International Motor Company to "make layouts and supervise layouts and also supervise the detail of these layouts," since 1918; that the International Motor Company was a manufacturer of trucks and busses; that in September, 1922, M. C. Frins, who was chief draftsman of the International Motor Company, assigned appellee to the work of making some studies of a four-wheel drive construction to be used on a six-wheel bus or truck, which should have the power divided evenly between the driving axles; that appellee directed Charles Froesch, a draftsman in the employ of the company, to prepare a drawing and print of a dual rear axle drive along the lines of the conception which appellee claims he made at the time of the invention in issue. This drawing is in evidence, and is claimed to support the count of the issue here. From that time until about the middle of December, 1922, the appellee claims he worked upon the problem of dual rear axle drives. During that time appellee prepared three or four different designs for four-wheel drives. One of these drives had the differential mounted on the chassis, and sprung, and some did not. During all of this period Froesch worked under his direction on this work.

The appellee's rights under his application here, if any, are assigned to the International Motor Company by reason of the terms of his employment with that company. The appellee testified that he had nothing to do with the making of applications for inventions made by him; this being controlled entirely by the company with which he was employed.

During the time Midboe was doing his work on axles, he was also making a study of spring suspension for these axles. After the middle of December, 1922, Midboe did no further work upon drives for tandem axles, and from that time until the time of filing of his application for patent, and until the time when a bus was actually constructed and operated, had no control over the steps that were to be taken in reducing to practice, and procuring a patent for, said dual rear axle drive. This was in the hands

of the proper officials of the International Motor Company. At the time Midboe stopped his work on dual axle drive, from eight to ten different designs had been submitted by him to Alfred F. Masury, who was chief engineer of the International Motor Company, and in charge of the work in which Midboe was engaged.

It appears from the testimony of said Alfred F. Masury that in the fall of 1922 he and other officials of the International Motor Company decided to build a large six-wheel dual axle drive bus. From that time until September or October, 1924, when the bus was completed and first operated, the International Motor Company was engaged, at various times, in planning and perfecting the details for the various elements which were to be combined in this bus. It is said that approximately $100,000 was expended in the completion of this vehicle. It appears from the testimony that repeated conferences were held about the design and type of the engine, type of drive, type of spring suspension, size of chassis and body, and of every specific detail that went into its construction. To illustrate, Masury testified that there were "twenty layouts of different arrangements, from beveled drives to each wheel, to chain drives with differentials placed in all critical points, sprung or unsprung. These gradually were sifted down to about ten arrangements." A plan for some part of the mechanism would be tentatively adopted and then afterwards rejected, as the work progressed, and as the result of further conferences.

The work done by Midboe on dual axle drives was only a small factor in the problem which the International Motor Company was trying to work out, and it was only after many other plans had been examined and closely scrutinized, that a differential and drive system, such as Midboe claims he first conceived, was finally put into the completed vehicle.

Masury was asked why he did not have applications for patents prepared and filed on such designs as were involved in this interference. To this he replied: " * * * These other designs were not regarded as successful, and of this great mass of work we only proceeded to patent work on the ones we regarded as the best. Study and comparisons of assemblies had to be made before arriving at any conclusion to patent any one. The work had not proceeded far enough to take it out on this job at that time."

Again he said, as to a power dividing unit for a dual drive: " * * * It was very necessary to have studies completed on weights, speeds, torques, load of vehicle, tire deflections, spring accelerations, and driving accelerations, that is speed due to one wheel running up over a rock, or one wheel being retarded by going into a hole, size of shafts, bearings, power, and the range in the motor, which would make this a practical vehicle."

Without going further into the testimony in the record, which is quite lengthy, it is very apparent that the International Motor Company was endeavoring to build a bus, and that there was no well-developed plan for the various details thereof; that the company was, through its officials, attempting to develop a complete vehicle with its various features suited to each other, so that when the vehicle was completed its parts would be correlated and efficient.

From immediately prior to the time of Fageol's filing date, September 25, 1923, there was a burden of diligence imposed upon appellee to reduce his invention to practice.

The application of Midboe was filed on February 29, 1924, five months thereafter. During this five months' period there is nothing shown in the record as to any activity of Midboe. There is also no activity shown by the International Motor Company, his assignee, as to the invention in issue. The best that can be said is that during that period the International Motor Company was proceeding with the work upon a six-wheel bus which might or might not include the invention in issue.

It is claimed that a stipulation contained in the record is to the effect that instructions were given to Midboe's solicitor on December 4, 1923, to prepare an application for patent. The stipulation does not so recite. It is stated therein that on that date Campbell, attorney for the International Motor Company, instructed a Patent Office draftsman to prepare drawings for such an application, but nothing is shown as to the source of his authority, or as to how long this matter had remained in his charge, without action on his part.

We are of opinion, as was the Examiner of Interferences, that the appellee has not shown sufficient diligence to entitle him to priority, in view of the facts appearing on this record.

The issue involved here is not one of priority of invention of a bus, but of a dual

axle drive. The appellee's assignee was not justified in waiting until it perfected every detail of its new bus before filing this application. As a matter of fact, the record shows that the application made by Midboe was made eight months before there was an actual reduction to practice by the operation of the bus. This application discloses only a dual drive for motor vehicles, and includes no other detail of the proposed construction of said bus.

It also appears from the record that, during the time this bus was being built, appellee's assignee filed applications for three patents on other devices, which might ultimately become a part of the bus mechanism, and upon which patents were duly granted.

In view of this state of the record, we cannot conclude that the appellee and his assignee have sustained the burden of diligence imposed upon them. Even conceding that Midboe was the first to conceive, he should not be permitted to lay his conception aside, take up, and experiment with, many other mechanical problems and devices, and then be permitted to defeat one who enters the field and reduces the invention to practice while he was experimenting with such other devices. This doctrine, based on sound reasoning, has been repeatedly announced by the courts. Clement v. Roberts, 51 App. D. C. 29, 273 F. 757; Lotterhand v. Hanson, 23 App. D. C. 372; Van Auken v. Cummings, 49 F.(2d) 490, 18 C. C. P. A. 1250; Automatic Electric Co. v. Dyson, 52 App. D. C. 82, 281 F. 586; Stapleton v. Kinney, 18 App. D. C. 394; Liberman v. Williams, 23 App. D. C. 223; Robinson v. Copeland, 24 App. D. C. 68.

It is also true that one may not ordinarily delay the actual or constructive reduction to practice of some invention indefinitely, while an attempt is being made to commercialize the same or incorporate the same as a unit in some composite structure. Auto. Weighing Machine Co. v. P. S. Corp. (C. C. A.) 166 F. 288.

It having been determined that the Board of Appeals was in error in awarding priority on the record to Midboe, the sole remaining question is as to the right of Fageol to make the count of the interference. Three tribunals of the Patent Office having concurred in the decision that he did have such right, this court will not disturb such findings unless we find they are manifestly wrong. Braren v. Horner, 47 F.(2d) 358, 18 C. C. P. A. 971; Bennett v. Fitzgerald, 48 F.(2d) 917, 18 C. C. P. A. 1201.

We are unable to so find. Fageol plainly disclosed the invention here in issue in his original specification, and this was a sufficient basis upon which to permit him to illustrate the same by the amended drawing. We find no error in the decision of the Board of Appeals on this point.

The decision of the Board of Appeals is reversed on the issue of priority. Priority will therefore be awarded to the senior party, Fageol.

Modified.

LENROOT, Associate Justice (concurring).

I concur in the conclusion reached by the majority and in all of the opinion except the statement that there is nothing in the doctrine announced in the case of In re Tucker, 54 F.(2d) 815, 816, 19 C. C. P. A. (Patents) ——, which prevents a finding by this court upon the question of appellant's right to make the claim involved herein.

In said case, in which Judge Hatfield and I concurred in the conclusion, the majority opinion states: "We have concluded that, by the quoted provision of section 4914 [35 USCA § 62], Congress meant only to confer upon this court a limited judicial review for the purpose of revising the decision appealed from, and for the correction of such errors only as are made by the patent tribunals appealed from, and *which are definitely pointed out and complained of in the reasons of appeal.* We feel therefore constrained to hold that even if the Board's rejection of the claims involved is regarded as proper, when reasons other than those assigned by it are considered, we would not be justified in affirming such action on such grounds." (Italics mine.)

In the case at bar, the right of appellant to make the claim is not "complained of in the reasons of appeal," nor could it be, because appellant could not complain of a decision in his favor.

I therefore conclude that the majority opinion herein does clearly modify the rule declared in said In re Tucker, supra, and such modification meets with my approval.