43 C.C.P.A.(Patents)

**Henry ST. PIERRE, Appellant,**

v.

**Draper M. HARVEY, Appellee.**

**Draper M. HARVEY, Appellant,**

v.

**Henry ST. PIERRE, Appellee.**

**Patent Appeals Nos. 6196, 6197.**

United States Court of Customs
and Patent Appeals.

May 15, 1956.

Charles R. Fay, Worcester, Mass. (Munson H. Lane, Washington, D. C., of counsel), for St. Pierre.

Richard E. Babcock, Jr., and Watson, Cole, Grindle & Watson, Washington, D. C. (Nathaniel Frucht, Providence, R. I., of counsel), for Harvey.

Before JOHNSON, Acting Chief Judge, and WORLEY and JACKSON (retired), Judges.

WORLEY, Judge.

These appeals from the Board of Patent Interferences of the United States Patent Office involve three interferences. Appeal No. 6196 was taken by St. Pierre from the decision of the board in Interference No. 85,790, awarding priority of invention of the subject matter involved to Harvey, while Appeal No. 6197 was taken by Harvey from decisions of the board in Interferences Nos. 86,254 and 86,273, awarding priority to St. Pierre. The same testimony was presented in the three interferences and the Board of Patent Interferences disposed of them in a single decision. We shall do likewise. Interference No. 85,790, which forms the basis of Appeal No. 6196, has the broadest issue and will be considered first.

### Interference No. 85,790

This interference involves application No. 16,742 filed by Harvey on March 24, 1948, and patent No. 2,538,046, granted to St. Pierre on January 16, 1951, on an application filed March 3, 1948. Harvey is thus the junior party and since his application was copending with that of St. Pierre, he has the burden of proving his case by a preponderance of the evidence.

The invention in issue is a cross chain for a tire chain defined in the following count which originated in the patent to St. Pierre of which it forms claim 1:

"1. A cross chain for a tire chain comprising a series of connected links including anti-skid elements each secured to a link and each element being in the form of a dish having concavo-convex surfaces, and having ground engaging points connected by curved lines forming the sides of the anti-skid element."

It will be seen that the count calls for dish-shaped members having ground engaging points connected by curved lines. As shown in the St. Pierre patent those members are formed by dishing square pieces of flat metal so that the corners project upwardly to form the points. The dished members are secured to the links of the cross chain by welding them to the links in such positions that the adjacent sides of the members are approximately parallel. The Harvey application shows dished members of a somewhat different form, provided with ground engaging points and attached to the links of the cross chain by cylindrical shanks which pass through the links and are free to turn therein.

It is urged here by St. Pierre that the statement in the count that the anti-skid elements are secured to the links is limited to a construction in which there is a rigid fixing as by welding, as distinguished from a rotatable attachment such as shown by Harvey. It does not appear that contention was made below; but, in any event, we do not think it sound. The word "secured" is not ordinarily limited to a rigid association of parts but includes rotatable or sliding connections, Liquid Carbonic Co. v. Gil-

christ Co., 7 Cir., 1918, 253 F. 54, and there is no reason for reading a restricted meaning into it here.

The board held that St. Pierre had failed to prove conception of the invention in issue prior to a conference on February 27, 1948, at which Harvey disclosed to St. Pierre a structure satisfying the count. The board therefore held St. Pierre was not the original inventor, and awarded priority to Harvey.

■ The board was of the opinion St. Pierre was not an original inventor, thus Harvey's date of reduction to practice was considered immaterial, and the question whether Harvey actually reduced the invention to practice prior to his filing date is not discussed in the board's decision. However, we think the evidence establishes that the parties independently invented the subject matter in issue and it is, therefore, necessary to determine the date and sufficiency of Harvey's reduction to practice. Matters ancillary to priority may properly be considered by this court when necessary to a proper decision in an interference case, even though they were not specifically passed upon in the Patent Office. Fageol v. Midboe, 56 F.2d 867, 19 C.C.P.A., Patents, 1117, and cases there cited; and Groll v. Reid, 118 F.2d 931, 28 C.C.P.A., Patents, 1045.

Harvey's claim of actual reduction to practice is based primarily on tests of a device of the kind produced as his exhibit 2. That exhibit is a cross chain corresponding to that shown in his application No. 16,742 and satisfying the requirements of the count. The evidence satisfactorily shows that a device of that kind was made in January of 1948, and Harvey is therefore entitled to a conception date as of that time.

In that regard, however, proof of satisfactory reduction to practice is another matter. Harvey testified he put cross chains corresponding to his exhibit 2 on a car in January 1948, and drove it over a street covered with snow and ice. He stated that, as compared with conventional chains "there was a definite im-

provement in traction and the only defect which was apparent was there was a heavy impact due to the high profile of the first construction as it came in contact with the surface of the road."

Testimony was also given by Albert Tedesco and Albert Cotton, who accompanied Harvey. Tedesco stated that he was quite pleased with the results and that the new chains seemed to grip better than normal ones. Cotton stated that the new chains were satisfactory "as far as I could see." He fixed the distance driven during the test as "perhaps a mile and a half."

It is to be noted that the new non-skid elements were applied to conventional tire chains which, under normal circumstances, would have provided resistance to side-slipping and skidding without such elements. In our opinion it would be difficult to determine, in such a short drive, whether any substantial improvement had been effected. Moreover, even a drive of a mile and a half was sufficient to develop a definite defect, namely, that the high profile caused a heavy impact.

It is evident that repeated heavy impacts might quickly wear down the non-skid elements to a point where they would be ineffective, or might cause them to be bent or detached from the chains. Further, the sharp projections on those elements might well contact and damage the tire. Those defects would be especially likely to develop in driving over roads bare of snow, and it does not appear that Harvey's test involved driving over such roads for any considerable distance. Neither the cross chains nor the tires used in that test have been produced, and there is no evidence they were inspected after the test, or as to their condition at that particular time.

■ The exact extent of testing necessary to effect a reduction to practice is a matter which must be determined by the circumstances of each particular case and the nature of the device involved. Generally the tests must be sufficient to give assurance that the device will operate satisfactorily under normal working conditions for a reasonable length of

340

time. Kruger v. Resnick, 197 F.2d 348, 39 C.C.P.A., Patents, 994.

██ Applying that standard here, Harvey's test of January 1948 was insufficient to establish a reduction to practice. The utility of a tire chain which shows an admitted defect in so short a distance as a mile and a half is not properly established, despite general testimony to the effect the operation appeared to be satisfactory.

██ Since there is insufficient evidence of the testing of any other chain by Harvey, even to the degree exhibit 2 was tested, prior to March 3, 1948, when St. Pierre constructively reduced the invention to practice by filing the application on which his patent No. 2,538,046 involved in this interference was granted, Harvey was subsequent to St. Pierre in reducing to practice. It is therefore unnecessary to consider whether St. Pierre made an actual reduction to practice.

St. Pierre introduced as exhibits 2 and 6 two tractor chains having dished non-skid elements. The board properly held they satisfied the requirements of the counts of Interferences Nos. 85,790 and 86,273, since there is nothing in those counts which would limit them to chains for passenger cars as distinguished from tractors.

St. Pierre testified he directed that exhibit 2 be made in 1946, and that exhibit 6 was made "between '46 and '47." He stated they were tried out on a farm and that he was satisfied he had a commercial product. His witness Resseguie testified that he assisted in making St. Pierre exhibit 2 at some time in 1946, fixing the date as being before a strike which took place in 1947, and that it was tried out on a tractor. He also testified that exhibit 6 was made and tried out in 1946.

The witness Vancellette testified that St. Pierre's exhibit 6 was made and assembled in the fall of 1947. He fixed the date as being immediately after the strike which took place in the summer of that year, and stated the exhibit was tested on a tractor before the snow which started before Christmas of that year.

Another St. Pierre witness, Trudeau, testified that he tested exhibit 2 at two different times in 1946 and that he tested exhibit 6 in the fall of 1947 before he left for Florida on November 15 of that year. He fixed the date when he tested exhibit 2 as being before the 1947 strike, and the date of testing of exhibit 6 as being shortly after that strike.

Still another witness, Flanders, testified that he helped assemble exhibit 2 on a tractor for testing in December 1946.

The foregoing testimony is clear and generally consistent, except that Resseguie places the making of exhibit 6 in 1946, while the other witnesses place it in 1947. However, they all agree both exhibits were completed and tried out on a tractor prior to the end of 1947. The means used by the witnesses in fixing the dates are plausible and it seems extremely unlikely that all of them could be mistaken.

It appears the board decided against St. Pierre primarily on the basis of the testimony relating to the conference of February 27, 1948. After an extensive discussion of that testimony, which is conflicting in many respects, the board accepted Harvey's version, and held he had disclosed his exhibit 2 to St. Pierre at the conference, but that St. Pierre had not disclosed to Harvey any device corresponding to that in issue here. We shall not discuss that testimony in detail since it is not disputed that Harvey's exhibit 2 was disclosed at the conference and also since, in our opinion, it is immaterial what devices, if any, St. Pierre disclosed to Harvey.

We are unable to agree with the board that St. Pierre's failure to disclose the invention in issue to Harvey at the conference justifies rejection of the testimony of St. Pierre, Vancellette, Trudeau, Flanders, and Resseguie to the effect that St. Pierre had conceived a device satisfying the requirements of the count, and embodied it in actual devices long prior to the conference.

The record shows the conference was held at Harvey's request to enable him to

disclose his new cross chain to St. Pierre. It is not clear why St. Pierre should have been under any obligation to produce his exhibits 2 and 6 at that conference, especially since they differed in material respects from Harvey's exhibit 2, and it would not necessarily have been apparent, especially to a layman, that there was a common invention involved. In our opinion the mere disclosure by Harvey of his exhibit 2 would not seem to have placed any burden on St. Pierre to produce his previous experimental devices; viz., exhibits 2 and 6. His failure to produce those exhibits at the conference affords, at best, merely speculative and negative evidence as to whether they were in existence at that time.

The board also appears to give great weight to the fact that St. Pierre, in seeking a loan in March or April of 1947, prepared a statement of the operations and prospects of his company, did not include any reference to a device such as his exhibit 2 or 6. However, that does not appear significant, since St. Pierre evidently had no definite commercial plans for such a device at that time, and the tests of exhibit 6 were not completed until the fall of 1947.

The fact that St. Pierre filed the application on which his patent was granted shortly after his conference with Harvey does not afford convincing evidence that the invention disclosed in that application may well have been inspired merely by the knowledge that a possible rival was in the field with a device somewhat similar to St. Pierre's earlier devices. There are substantial differences between what is shown in the St. Pierre patent and what is embodied in Harvey's exhibit 2. Those differences suggest St. Pierre was disclosing an invention of his own rather than merely copying what Harvey had shown him.

We do not fully understand why the board did not discuss in greater detail the testimony of St. Pierre and his four corroborating witnesses relative to the St. Pierre exhibits 2 and 6. The witnesses testified in detail and were subjected to full cross-examination. Their testimony is clearly material, and, in the absence of evidence of fraud or perjury, was entitled to greater weight than that seemingly accorded it by the board.

We think the record, considered as a whole, establishes that St. Pierre conceived the invention in issue in Interference No. 85,790 not later than the end of 1947, and, since Harvey alleges no date of conception prior to January 1948, St. Pierre was the first to conceive. Since Harvey's test of the invention embodied in his exhibit 2 in January 1948 was not sufficient to establish a reduction to practice, and since there is no other evidence proving a reduction to practice by him prior to St. Pierre's filing date of March 3, 1948, the latter was the first to reduce the invention to practice and, therefore, should receive the award of priority.

### Interference No. 86,254

■ This interference involves St. Pierre's design patent No. D–162,489 issued March 13, 1951, on an application filed September 9, 1950, and Harvey's design application No. 14,902 filed April 20, 1951. Having filed his application after St. Pierre's patent was granted, Harvey has the burden of proving priority of invention beyond a reasonable doubt.

The St. Pierre patent shows a conventional cross chain having eight links. In each one of the middle six of these links there is mounted a generally square dished member having projecting points connected by curved edges. As shown, the sides of these members are shorter than the width of the links, and the members are so mounted that their adjacent sides are parallel. The Harvey application shows substantially the same design except that the dished members are somewhat larger.

Harvey relies for conception and reduction to practice on a sample cross chain offered as his exhibit 6, and allegedly made in January 1948. That chain has eight links, four of which have square dished members having projecting points, secured at the opening of the

link. Two of the dished members are welded in position with their adjacent edges parallel. The other two are pivotally mounted in the links so that they may assume any one of a variety of positions. The cross chain was evidently not designed for use, but as a sample of various anti-skid members, since no two of the dished members are identical.

The arrangement of the square dished members with their adjacent edges parallel is clearly an essential feature of the design in issue in Interference No. 86,254, and that feature is not fairly disclosed in Harvey's exhibit 6. While two of the members happen to be fixed in that position, the other two are not, and the exhibit, therefore, does not definitely suggest placing all four members in that relationship. Moreover, the chain includes only four dished members while the patent and application in interference show six.

It is evident the design involved in Interference No. 86,254 is not of a pioneer nature, but depends for its patentability on the specific size and arrangement of parts. In our opinion, Harvey's exhibit 6 is not sufficiently similar to the design in issue in that interference to establish a conception thereof by him.

■ Moreover, we agree with the board that Harvey has failed to establish beyond a reasonable doubt that his exhibit 6 was in existence prior to his conference with St. Pierre on February 27, 1948, or at any time prior to St. Pierre's filing date. The testimony of Harvey's witnesses as to when they saw exhibit 6 is generally indefinite. Such testimony does not carry thorough conviction, particularly in view of the facts that Harvey admittedly did not take exhibit 6 with him to the conference with St. Pierre, and that, although he filed an application on the structure of his exhibit 2 in March 1948, he did not file an application on the design here in issue, which he alleges was embodied in exhibit 6 in January 1948, until more than three years later, and then only after St. Pierre's design patent had been granted.

Since Harvey has failed to establish beyond a reasonable doubt that he conceived the design in issue in Interference No. 86,254 before the filing of the application on which St. Pierre's design patent involved in that interference was granted, St. Pierre must prevail on the basis of his filing date, and it is thus unnecessary to discuss the evidence offered by him.

Interference No. 86,273

■ Interference No. 86,273 involves claim 2 of St. Pierre's patent No. 2,-538,046, the application for which was filed March 3, 1948, and which is also involved in Interference No. 85,790, and Harvey's application No. 222,828, filed April 25, 1951, after St. Pierre's patent had issued. Harvey therefore has the burden of proving priority beyond a reasonable doubt. Lichtenwalter v. Caron, 158 F.2d 1011, 34 C.C.P.A., Patents, 792. The count of Interference No. 86,-273 is the same as that of 85,790 with the additional limitation that successive anti-skid elements of the cross chain "are arranged with one pair of their edges substantially parallel to the corresponding edges of the adjacent element."

As pointed out above, St. Pierre's exhibits 2 and 6 satisfy the requirements of the count of Interference No. 86,273, and it is satisfactorily established that those exhibits were made prior to January 1948, which is the earliest date of conception contended for by Harvey. St. Pierre, therefore, was the first to conceive the invention in issue in Interference No. 86,273.

■ Harvey's exhibit 2, which was considered in connection with Interference No. 85,790, does not satisfy the count of Interference No. 86,273. For evidence of conception of the invention in issue in the latter interference, Harvey relies on his exhibits 6 and 9, which allegedly embody the invention in issue in that interference and which are said to have been made in January 1948. Even assuming the making of those exhibits at the time alleged has been established, there is still no evidence that

chains of the type which they represent were sufficiently tested to establish a reduction to practice as early as March 3, 1948, when St. Pierre constructively reduced the invention to practice by filing the application on which his patent No. 2,538,046 was granted.

Harvey, when asked on cross-examination if and when he actually road-tested any sample other than those corresponding to his exhibit 2, replied that he *assumed* he did so on or about February 25, 26, or 27, 1948. It is not seen how that testimony definitely fixes any date of testing as early as March 3, 1948, and, moreover, it is indefinite as to the nature and extent of the alleged tests. Further, there is no corroboration as to any test of Harvey's exhibit 6 or 9. The closest approach to corroboration is the testimony of the witness Albert Tedesco who, when asked whether Harvey attached links of that type to his car, replied "Yes, I am quite sure he did to the best of my knowledge." That is clearly not sufficient corroboration of a satisfactory test on any definite date.

We are of the opinion Harvey has failed to establish a reduction to practice of the invention in issue in Interference No. 86,273 as early as March 3, 1948. He is subsequent, therefore, to St. Pierre in both conception and reduction to practice and cannot prevail.

The decision of the Board of Patent Interferences in Appeal No. 6196 is reversed and its decision in Appeal No. 6197 is affirmed. Priority of invention of the subject matter in issue in Interferences Nos. 85,790, 86,254, and 86,273 is awarded to Henry St. Pierre, the senior party.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL and COLE, JJ., because of illness, did not participate in the hearing or decision of this case.