Joseph C. **DUDDY**, Appellant,

v.

Frank **SOLOMON**, Appellee.

Patent Appeals No. 6255.

United States Court of Customs and Patent Appeals.

March 29, 1957.

to a major extent, by sintered particles of metallic silver."

As originally declared, the interference involved appellant Duddy's application, No. 243,933, filed August 28, 1951, and a joint application of Martin E. Kagan and Frank Solomon, No. 174,076, filed July 15, 1950. Later, the sole application of Solomon, No. 319,406, filed November 7, 1952, and alleged to be a division of the Kagan and Solomon joint application, was substituted for that application. The examiner accorded Solomon the benefit of the joint filing date, making him the senior party.

Thereafter, Solomon moved to dissolve the interference on the ground that the disclosure of Duddy's application did not support the count, while Duddy moved to restrict Solomon to the filing date of his sole application, alleging that the count was not supported by the disclosure of the joint application. Both motions were denied by the Primary Examiner, who held the count to be supported both by Duddy's application and by the joint Kagan and Solomon application.

On appeal, the board held the count to be supported by the disclosure of the Kagan and Solomon application, but not by Duddy's application. It also held that Duddy had failed to establish an actual reduction to practice or diligence in reducing to practice and, therefore, could not prevail over Solomon even if the latter were restricted to the filing date of the joint application. Accordingly, the board found it unnecessary to consider Solomon's evidence and awarded priority to him.

Duddy contends here, as below, that the Kagan and Solomon joint application does not support the interference count on the ground that it does not sufficiently disclose an electrode which is self-supporting, or which is constituted to at least a major extent by sintered particles of silver.

The joint application discloses two types of electrodes, one of which comprises a flat plate having openings or windows which are filled with powdered

Woodcock & Phelan and Virgil E. Woodcock, Philadelphia, Pa. (Edward J. Dwyer, Detroit, Mich., Robert I. Staples, Philadelphia, Pa., and Miles D. Pillars, Washington, D. C., of counsel), for appellant.

Watson, Cole, Grindle & Watson and Francis G. Cole, Washington, D. C., for appellee.

Before JOHNSON, Chief Judge, and WORLEY, RICH and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter involved to the senior party, Frank Solomon appellee here.

The count reads:

"An electrode for electric batteries, comprising a self-supporting, flat, plate-like body consisting throughout its thickness of comminuted material, said comminuted material being constituted, at least

silver, while the other consists of a flat plate formed of silver particles with a metal connector strip extending centrally throughout the length of the plate and embedded in the silver. The specification of the application states that the silver particles are compressed and heated to cause them to be sintered.

While the Solomon and Kagan specification does not state in so many words that the comminuted material, after heating, is constituted at least to a major extent by sintered particles, we are of the opinion that such will obviously be the case. The specification sets forth as one object of the invention the production of an electrode which is rugged and mechanically stable and not subject to objectionable deformation or disintegration. It further states, with respect to the first type of electrode disclosed, that the silver particles, after sintering, are of a spongy character and "form a rigid mechanical and galvanical unit with the frame member." With respect to the second type of electrode, it is said that the particles are compressed and heated in substantially the same manner as in the first.

From the foregoing it seems clear that sintering is carried out to such an extent that the particles of silver cohere to form a uniform spongy mass, and that such a result could not be obtained unless a majority of the particles were sintered.

As above noted, the second type of electrode disclosed by the joint application comprises a connector strip embedded in a "plate-like mass" of sintered silver and projecting therebeyond to form a terminal. We have carefully considered appellant's arguments to the effect that the electrodes of the joint application depend for their support on the portions which are not sintered, but we are in agreement with the concurrent holdings of the examiner and the board that the sintered plate-like mass described is self-supporting and is not deprived of that property by the fact that the connector is embedded in it.

The connector forms only a small part of the electrode and it seems evident that if the sintered material is sufficiently coherent to make the portions of the electrode which extend beyond the connector self-supporting, as it must be if the electrode is to be operative, then the coherence must also be sufficient to make the plate-like mass as a whole self-supporting. The connector is evidently embedded in the sintered material in order to produce a unitary structure and to give a good electrical contact, rather than from any necessity of providing mechanical support.

The count originated in the joint Kagan and Solomon application. Accordingly, if its meaning is ambiguous, it is to be interpreted in light of the disclosure of that application. Neumair v. Malocsay, 77 F.2d 622, 22 C.C. P.A., Patents, 1349, and cases there cited. Under such circumstances it would not be proper to read into the count any special meaning or limitation not clearly expressed which would prevent it from being readable on the disclosure of that application. A more convincing showing is necessary to justify a holding that a claim is not readable on the application in which it originated, than is required where the claim was copied from another application or patent.

We are of the opinion that the count is properly supported by the disclosure of the joint application, and that Solomon is therefore entitled to the July 15, 1950, filing date of that application for conception and constructive reduction to practice of the invention in issue.

Since the sufficiency of Duddy's evidence depends largely on whether he made an actual reduction to practice, it is desirable to determine at the outset what steps are necessary to effect such a reduction to practice of the particular invention here.

The invention is an electrode which, so far as disclosed, is useful only in electric batteries. It is obvious that the suitability of such an electrode for

such use could not be determined by mere inspection and that tests would be necessary for that purpose. As was said in St. Pierre v. Harvey, 233 F.2d 337, 339, 43 C.C.P.A., Patents, 918:

"The exact extent of testing necessary to effect a reduction to practice is a matter which must be determined by the circumstances of each particular case and the nature of the device involved. Generally the tests must be sufficient to give assurance that the device will operate satisfactorily under normal working conditions for a reasonable length of time."

A number of decisions illustrating the general rule that tests under working conditions are necessary to establish an actual reduction to practice are cited in Payne v. Hurley, 71 F.2d 208, 21 C.C.P.A., Patents, 1144. In that case it was held that a spark plug for an internal combustion engine required tests in such an engine.

Appellant has shown no reason for making an exception in the instant case, consequently we share the opinion below that the electrode could be actually reduced to practice only by satisfactory use in a battery.

Duddy's application discloses the production of a battery electrode by impregnating a base sheet of combustible material such as filter paper with a silver nitrate solution, partially drying it, and burning the base sheet. As a result, the silver nitrate is converted to metallic silver which remains in the form of a porous network composed of silver particles "weakly cohered together in a spongy mass." His evidence relates principally to electrodes prepared in the general manner just described.

Duddy claims a reduction to practice on or about July 5, 1949, based on the alleged testing by him at his home, of electrodes said to have been prepared by him in accordance with the requirements of the count. The testimony of Duddy's neighbor, one James M. Burns, is relied on as corroborating Duddy's testimony as to such tests. However, as pointed out by the board, Burns did not specify the date of any tests witnessed by him and did not witness the preparation of the electrodes. He stated merely that there was a "silver electrode or a silver plate that Mr. Duddy prepared." There is thus no sufficient corroboration of Duddy's testimony as to the date of the tests in question, or the nature of the plates tested. Therefore he cannot be accorded a reduction to practice on the basis of his alleged tests in July 1949.

Duddy also claims a reduction to practice in August 1949 on the basis of the testing at that time by one Curtice C. White of some disc electrodes submitted to him by Duddy and allegedly embodying the invention. The report prepared by White after those tests is dated August 2, 1949, and contains the following observations:

"The discs are low in efficiency when compared with our standard positive silver plate.

"The discs are too fragile to be practical.

"Efficiency might be improved if better contact could be obtained."

The report concludes with the following statement: "No further work seems to be indicated unless the objections pointed out can be corrected."

In commenting on White's report in a Disclosure of Invention form dated August 15, 1949, Duddy said: "Although this report indicates unfavorable conclusions in every respect, it is to be remembered that the samples were the very first ever produced, were *uniformly porous* therefore with no grid members present and were submitted only to illustrate a principle." (Italics quoted.)

It seems obvious from the quoted statement that Duddy and his associates did not think, at least in August 1949, that the electrodes tested had been shown to be satisfactory. As was said in Smith v. Nevin, 73 F.2d 940, 944, 22 C.C.P.A., Patents, 748:

"If the inventor, at the time of his conception and test did not con-

sider the test successful, the court cannot be called upon, at a later date, to give this test a status which the inventor did not attribute to it at the time."

Duddy also testified to the making of two additional electrodes in August 1949, but there is no evidence to support a holding that they were ever satisfactorily tested in a battery.

The record also contains evidence as to the making of certain electrodes by White in August and September 1949 but, since there is no evidence as to the successful use of any of them in batteries it is clear that no reduction to practice can be based upon them.

Finally, there is evidence of experiments carried out by White's assistant, one J. J. Melon, in the fall of 1949. Some of his experiments related to structures in which the electrode material was pressed into a copper screen. Such an electrode clearly does not comprise "a self-supporting, flat, plate-like body consisting throughout its thickness of comminuted material" as required by the count, and experiments on that type of electrode, therefore, are not pertinent here. While Melon apparently made some electrodes without the copper mesh support, there is no evidence as to the testing of any of those electrodes in a battery and, accordingly, a reduction to practice cannot be predicated upon them.

■ For the reasons given, we agree with the board that Duddy has failed to establish an actual reduction to practice and must, accordingly, be restricted to the filing date of his application, August 28, 1951, for constructive reduction to practice. Accordingly, even assuming that Duddy was the first to conceive the invention in issue, and that Solomon is entitled to no earlier date of invention than July 15, 1950, the filing date of the Kagan and Solomon joint application, Duddy still cannot prevail unless he has shown reasonable diligence during the period between July 15, 1950, and August 28, 1951, the filing date of Duddy's application. There is no evidence of anything approaching continuous activity by Duddy during that critical period, either in attempting to make an actual reduction to practice or in preparing an application for a patent. It must, accordingly, be held that he was lacking in diligence.

Since it follows that priority was properly awarded to Solomon it is unnecessary to consider the remaining questions raised by appellant, including Duddy's right to make the count.

■ Pursuant to a stipulation of counsel for the respective parties suggesting a diminution of the record, a petition by Duddy for reconsideration of the examiner's decision on the motions above referred to, filed November 19, 1953, together with certain supporting affidavits by James F. McGivern, Jr. and Robert I. Staples were added to the record, with costs to be taxed. Since the decision of the examiner on the petition is included in the record and modifies his former decision, the petition and affidavits should have been included in the record, and the costs incident to their inclusion are accordingly taxed against appellant.

The decision of the Board of Patent Interferences is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.